This is a tort action arising out of the collision of a service cycle operated by plaintiff, a messenger boy for the Western Union Telegraph Company and a 1 1/2-ton truck owned by V. Frank Lynn Company, Inc., and operated by its employee in the course and scope of his employment. *Page 88 
The owner of the truck, the operator of it and the liability insurer of the owner of the truck are all sued and an in solido judgment prayed for.
Edward Scruggs, a messenger boy, eighteen years of age and emancipated by marriage at the time this suit was filed, claims damages in the sum of $12,534 itemized as follows:
Permanent Injuries $6000.00 Pain, Suffering, Shock and Inconvenience 4000.00 Facial Disfigurement 2000.00 Loss of Earnings 160.00 Estimated Cost of Dental Work made Necessary by the Accident and Injury 350.00 Cost of Repairing Service Cycle 24.00 The lower court awarded plaintiff damages in the sum of $4,000. There is no written opinion and therefore the damages awarded plaintiff are not itemized.
Defendants are prosecuting this appeal and plaintiff has answered the appeal praying for a substantial increase in the award.
In limine defendants filed a plea of prematurity and an exception of nonjoinder, both of which were overruled. The plea of prematurity is based upon the allegation that plaintiff had not given his employer notice of the filing of this suit. The record discloses that such a notice was given, however, we are of the opinion that it was of no concern of defendants.
The exception of nonjoinder is based upon the alleged fact that plaintiff's employer was not made a party in order that it might claim compensation paid by it to plaintiff. This is likewise a matter in which defendants can have no interest. Both pleas were properly overruled.
Plaintiff contends he was riding his service cycle south on North Second Street in the City of Monroe, Louisiana, and when within thirty feet of a blind alley on the west side of North Second, a large truck driven by an employee of V. Frank Lynn Company, Inc., entered North Second Street from the blind alley directly in his path and that although he killed the motor of the service cycle and applied the brakes he was unable to bring it to a stop until after it crashed into the side of the truck and severely injured him.
Defendants contend that its truck entered North Second Street after every precaution had been taken to see that there was no traffic on said street; that the truck was stopped and its horn sounded while still in the alley and before it crossed the sidewalk; that as soon as the cab of the truck reached the street at a point where the driver could look both up and down the street, the truck was again stopped; that no one was in sight going either way at the time and the truck was again started and when the front end reached the street car tracks in the center of the street, because of a fast traveling car going north on the east side of the street, the truck was again stopped. That after it had been stopped a third time the driver saw plaintiff on his service cycle traveling southward crossing the railroad tracks 92 feet north of the truck; that plaintiff was looking toward his left and never looked ahead of him until he was within ten feet of the truck and too close to bring his machine to a stop before he crashed into the truck, which had never moved after having been brought to this third stop.
The truck driver testified to these facts upon which defendants base their contentions. We cannot and do not accept it as facts of the case. The preponderance of the testimony is to the contrary. The evidence preponderates in favor of the fact that plaintiff was looking ahead at all times after he crossed the railroad tracks 92 feet north of the scene of the accident. It also preponderates of the fact that the truck was only stopped twice and that it was not stopped as it entered North Second Street at a place where the driver could see in both directions. If it had been done we feel sure there would not have been an accident and this case would not be before us now.
The opinions of counsel for plaintiff and defendants are so widely divergent as to what facts the record does establish we have studied the case most carefully and with considerable curiosity as to what the actual facts are as shown by the record and feel confident we have correctly found them to be as follows:
North Second Street runs north and south and is forty feet wide with a ten-foot sidewalk on each side. The accident happened in the 100th block of that street, which is bounded on the north by *Page 89 
Jefferson Street, which in fact is the I.C. Railroad tracks and right of way, and on the south by DeSiard Street. Ninety-two feet south (we omit the fractions) of the railroad tracks on the west side of the street there is a blind alley ten feet wide, which runs behind some business houses. It is in fact a private alley, but used some by the public in general, against the wishes of its owners. There is a decline in the street of three feet from the railroad tracks to a point opposite the alley. The alley is 210 feet north of DeSiard Street.
At the time of the accident cars were parked on both sides of North Second Street which left an open space for traffic of approximately 28 feet. Some of the cars were parked on the west side of the street and just north of the alley and would obstruct the view of or into the alley by one using a service cycle and traveling south on the west side of the street as was plaintiff until a point in the street approximately opposite the alley was reached. The buildings on each side of the alley were flush with the sidewalk and has solid walls thereby making it truly a blind alley as it was only ten feet wide.
When the truck stopped the last time and when plaintiff crashed into it, the front end was about the old street car tracks in or near the center of the street or approximately twenty feet from the west sidewalk. The truck was a little better than twenty feet in length. Therefore, it is reasonable to find that the back of the truck at the most was only a few feet away from the west sidewalk. In other words, the truck had traveled approximately its own length after entering the street. The car parked on the west side of the street just north of the alley would have hidden the truck from plaintiff's view until the front end of it had advanced approximately six feet into the street. Therefore, after it came into plaintiff's view it traveled approximately 14 or 15 feet before it was stopped and we are sure the time that elapsed between its coming to a stop and the time plaintiff ran into it was almost too short to estimate. There is no sound evidence in the record by which we can estimate the speed of the truck as it entered the street.
Plaintiff's bike struck the truck on the side about twelve feet back from the truck's front end. When the truck driver started the truck out of the alley he either stopped it or slowed it down and sounded his horn. At that time he could not see anything on the sidewalk or in the street except what was straight in front of him. He did not stop again until the front end of his truck was in the center of the street and at the moment almost that plaintiff's service cycle crashed into the truck.
Plaintiff was familiar with the conditions existing on North Second Street. He knew it was a busy section and that traffic was unusually heavy at that time of day, 10:45 in the morning. He was traveling between 15 and 20 miles per hour and on his proper or right side of the street. He was looking straight ahead of him, down the street. He was within 30 or 35 feet of the place of collision when the truck came out or behind the parked car directly in front of him. He cut off his motor and applied his brakes but by the time he could perform these acts and they take place, he was much closer. The brakes did take effect and the bike skidded into the side of the truck. At the speed plaintiff was traveling, which was within the limit fixed by the City of Monroe, only a few seconds could have elapsed after he crossed the railroad tracks 92 feet away and the time the collision occurred. After defendant's truck stopped or slowed down in the mouth of the alley it had to be started up again and the time it took to cross the sidewalk and proceed out into the street no doubt also consumed a very few seconds. Both were moving objects one crossing the path of the other and we can realize the difficulty in fixing the exact spot the moving bike was at the time the truck entered the street and showed itself after getting out from behind the parked car or cars. Plaintiff's explanation that it happened so quickly it was difficult to give details just about explains the confusion in the testimony. The testimony of the driver of the truck that he did come to a stop in the center of the street at a time when plaintiff was crossing the tracks is not in accord with any of the testimony of the disinterested witnesses and we are sure it is not correct. He further testified that he turned his attention to a car coming from the south which had caused him to stop and when he looked again at plaintiff, after the northbound car had passed, plaintiff was within ten feet of his truck.
We are forced to the conclusion that the truck driver either never saw plaintiff until he was within ten feet of the truck or that *Page 90 
he saw him when he entered the street and thought he could get across and out of his way. In either instance he would be negligent.
The entry into a busy street from this blind alley was very dangerous and it called for all the care, caution and prudence the truck driver could exercise. He should have entered the street slowly and stopped where he could see clearly in both directions and remained stationary until the way was clear and all danger of a collision was passed. He failed to exercise the caution and care required of him at the alley and his failure to do so was gross negligence and the proximate cause of the accident.
It is contended by defendants that plaintiff, in a statement to the insurance company's adjuster, told the true facts and under that statement he cannot recover. We quote that part of the statement dealing with how the accident occurred:
"A. Monroe, La., June 11, 1940. I am Edward Scruggs, white, age 19 years (birth date 3-12-1921), son James Ben Scruggs and Bessie Smith Scruggs. I live at home with my parents at 219 Drew Street, West Monroe, La. I have for four years (since Jan. 2, 1936) been employed by Western Union as Messenger boy. My wage, since enforcement of the Wage Hour Law, is 40 C. per hour. I was involved in an accident on April 29, 1940. For the eight weeks immediately preceding my accident I earned a total of $127.80, as shown on form furnished by my employer.
"On April 29, 1940, at about 10:45 A.M., I was returning from 604 Erin Street to Peacock Jewelry Company. (I had carried a pkg. COD and was returning with the COD payt.) when I was hurt.
"I was riding a servicycle which I owned without encumbrances, south on North Second Street. I crossed over Railroad Ave., (ICC RR) at about 15 or 20 miles per hour. I had traveled from the railroad to a place directly in front of Monroe Wholesale Drug Company, when I first saw a truck coming out of alley or driveway which is located along the south building line or property line of the Monroe Wholesale Drug Company. It was then that I saw the truck coming across the west sidewalk of North Second. At this moment I saw the whole of the truck or what might be described as the whole front half of the truck, the rear half being out of vision because of the building.
"I did not see the truck while it was stopped west of the sidewalk, if it stopped at all. There were cars parked all along the west curb between me and this truck. Immediately upon seeing the truck I cut off my gas supply and rolled along for 12 or 15 feet to see what the movement of truck would be. Seeing that the truck continued to move forward I then applied my brakes and my tires skidded for 8 or 10 feet, or my tires skidded, from point where brakes were first applied to the point of collision.
"The front wheel of my motorbike struck the truck at a point to the rear of the rear wheel on left side of truck. My motorbike ran under the bed of the truck and was still standing up in the wedged position when I was picked up, so I am told by my dad who says that a striker at News Star World told him.
"At the time of the collision I saw no car or truck traveling north on this street. I had seen this truck coming out of this alley and across the sidewalk and had anticipated that I would follow through to the rear of this truck. However, before the rear of the truck cleared the cars parked at the west curb, the driver stopped his truck completely blocking my path. The whole thing happened so quickly that I did not see whether I could have gone in front of this truck or not."
There is a dispute as to the correctness of this statement between plaintiff and the adjuster although plaintiff signed it. He gives his reasons for doing so, which are denied by the adjuster. However, we are of the opinion there is very little variance between the statement and plaintiff's testimony when the statement is analyzed. We might say that the written language in the statement is admittedly that of the adjuster and not of plaintiff. Had plaintiff's language been used it might have shown differently. If we assume that the statement taken by the adjuster is the correct version of what took place it is our opinion that plaintiff could still recover and that the truck driver was guilty of negligence which was the proximate cause of the accident.
It states that plaintiff was directly in front of the Monroe Wholesale Drug Company when he saw the truck coming out of the alley (which is closer to the point of collision than he testified to on trial by several feet). At that moment he saw *Page 91 
the whole of the cab of the truck or front half of the truck, the rear half being out of his vision because of the buildings on the side of the alley. He did not see the truck stop west of the sidewalk. Immediately upon seeing the truck coming out of the alley onto the sidewalk, he cut off his gas and rolled along for 12 or 15 feet to see what the movement of the truck would be. Seeing that it was not going to stop before entering the street (which it was required to do by law) he then applied his brakes, causing the tires to skid 8 or 10 feet and into the side of the truck.
Plaintiff did not have to anticipate that the driver of the truck would be so reckless as to enter the street without first stopping to see if it could be entered with safety to himself and others; he had the right to rely upon the truck driver doing the right thing by obeying the law and bringing his truck to a stop before entering upon the street.
Later in the statement he said he saw the truck coming out of the alley and across the sidewalk and had anticipated that he would follow through to the rear of the truck, but before the truck cleared the cars parked at the west curb, the driver stopped the truck and completely blocked his path. That it all happened so quickly he did not see whether he could have gone in front of the truck or not.
If these two statements had been made at separate times it would be easy to say they were contradictory, but they were made at the same time and included in one written statement, paraphrased by the adjuster for the defendant insurance company and the only reasonable interpretation of the two statements, and the only one by which the two can be reconciled, is that when plaintiff first saw the truck coming out of the alley before it reached the place in the edge of the street where it should have stopped, he cut off his gas supply and coasted 12 or 15 feet until he could see what the truck driver was going to do. As soon as he saw the driver was not going to stop, as required by law and as he had expected him to do and had the legal right to assume he would, plaintiff then knowing he could not stop his service cycle in the short distance between it and the truck, hoped he could pass to the rear of the truck. The record shows that plaintiff cut or turned his service cycle in that direction and collided with the truck approximately 8 feet from its rear and had the truck continued on its way and not have come to a stop, plaintiff might have succeeded in passing to its rear.
The truck driver testified that after he stopped in the street (according to his testimony, his second stop), the cab of his truck had passed the car parked on the west side of the street, which would put the front end of the truck approximately 12 feet out into the street. He says at that time there was no traffic in either direction that could be seen and after he had started up again, he does not say how far forward he had moved, that he heard the tires of a car screech as it turned on DeSiard Street, 210 feet to his south, and that he was forced to stop again to let that car pass by. He apparently moved about 8 feet forward before stopping the last time, according to his testimony. If the truck was moving 6 or 8 miles per hour, the car approaching from DeSiard Street would have had to be flying in order to endanger the movement of the truck in turning north on the east side of the street.
We have not attempted to figure out what the speed of the northbound car would have been for it is evident that the truck was not stopped in the street but the one time and it is likewise evident that the northbound car was already on North Second Street when the truck entered it and proper observation on the part of the truck driver before attempting to cross the street would have caused him to discover it and not make that reckless entry into the street as he did. He was not only negligent in entering North Second Street at the time he did when plaintiff was so close by, but he was negligent in placing himself in such a position as to have to stop his truck and block the entire west side of the street. We fail to find any contributory negligence on the part of plaintiff which could be held to be a bar to his recovery.
This brings us to the disputed question of the amount of the award to which plaintiff is entitled. Neither side is satisfied with the award of the lower court nor are we.
Plaintiff was knocked unconscious and remained in that condition for several *Page 92 
hours. He was confined to the sanitarium for ten or eleven days and to his home several weeks longer. The under jawbone was completely broken on both sides and at least 12 teeth damaged by being broken and loosened. Nine teeth have been or will have to be removed, due to their damaged condition. The dental work necessary to repair his mouth, remove and treat the teeth and the bridgework to be put in will cost approximately $350.
The following day after the accident plaintiff's jawbone was set and his mouth wired together by placing wires through the upper and lower teeth and in one place the wire had to be run through the jawbone, due to the unstableness of the teeth at that point. His mouth was kept in this position for ten weeks, when the wires were removed and the jawbone was considered healed.
The pain and inconvenience suffered by the plaintiff was extremely severe. For several days at first he was fed through a tube running through the nose into the stomach. After that he was forced to live on liquids taken through the mouth by a glass tube or straw. He was not able to talk during the time his mouth was wired together. The only ill effect he now has is the loss and damage to his teeth.
The courts of this State have allowed as much as $500 for the loss of one tooth and in Gartman v. Traylor et al., La.App., 164 So. 600, we allowed a young boy fourteen years of age $1,600 for the loss of four teeth. We feel sure the award made by the lower court of $4,000 is about sufficient for the loss of the nine teeth, the dental cost of repairing several other damaged teeth and the replacement of the nine teeth with bridgework, or by other means the dentists may employ; and the $24, damage to the service cycle and $160 for loss of earnings, which was proved. Plaintiff is also entitled to substantial damage for the excruciating pain and suffering and the great inconvenience occasioned him by the accident. An award of $1,000 will, in our opinion, do justice for these items.
We therefore conclude that the judgment of the lower court should be amended by increasing the amount of the award from $4,000 to $5,000 and as amended, it should be affirmed and it is so ordered, adjudged and decreed. All costs to be paid by the defendants.