91 So.2d 77 (1956)
Joan PALMER et al.
v.
The FIDELITY & CASUALTY COMPANY OF NEW YORK et al.
No. 4303.
Court of Appeal of Louisiana, First Circuit.
November 26, 1956.
Taylor, Porter, Brooks, Fuller & Phillips, Frank W. Middleton, Baton Rouge, for appellants.
Joseph A. Gladney, Baton Rouge, for appellees.
LOTTINGER, Judge.
This case arises out of an intersectional automobile accident which occurred at the intersection of North 19th Street and Florida Street in the City of Baton Rouge, Louisiana, on August 15, 1954. The plaintiffs, all occupants of one of the two cars involved, named as defendants the Fidelity & Casualty Company of New York, the insurer of the Palmer automobile, and Robert L. Anderson, the owner and operator of the other vehicle involved. By supplemental petition filed just a few days *78 before trial of the case, it was sought to name The Travelers Insurance Company as an additional defendant. However, no citation was ever issued or served, and The Travelers Insurance Company was never made a party to the suit. Fidelity & Casualty Company of New York was dismissed from the case after trial in the District Court, and plaintiffs having taken no appeal from such dismissal, is not before the court on this appeal.
Willie W. Palmer originally filed suit on behalf of his four minor children, and together with the mother, Joan Palmer, claimed personal injuries as a result of the previously mentioned accident. The original petition filed by the wife and mother, Joan, and by the father, Willie W. Palmer, as the administrator of the estate of his minor children, alleged that the accident resulted from the joint negligence of Robert L. Anderson, the driver of the other vehicle involved, and of Willie W. Palmer himself, and prayed for judgment against both defendants. The supplemental petition filed February 24, 1956 attempted to add The Travelers Insurance Company as an additional defendant, and also recited that Willie W. Palmer, Individually, was a plaintiff, and in addition to the damages for personal injuries originally prayed for on behalf of the children and on behalf of Joan Palmer, the wife and mother, prayed for medical expenses and property damages on behalf of Willie W. Palmer in the alternative and only if the Court should find that Willie W. Palmer, Individually, was not negligent in the operation of his vehicle involved in the said accident.
Trial before jury was held on March 8 and 9, 1956, resulting in judgment being rendered against defendant, Robert L. Anderson and dismissing the suit as to Fidelity & Casualty Company of New York. From that judgment, Robert L. Anderson has appealed. Plaintiffs have answered the appeal, asking for an increase in the award of damages to four of the six plaintiffs.
Counsel for defendant, Robert L. Anderson, has filed in this Court, exceptions of no right and no cause of action together with an exception of prescription. The question of liability is not before this court as the appellant, Robert L. Anderson, concedes liability for recoverable and provable damages. Accordingly, the only issues before the court are the adequacy or inadequacy of the awards made by the Jury to the plaintiffs and the question of prescription with regard to the damage claim of Willie W. Palmer, Individually. The latter point will be considered first.
The original petition filed on August 12, 1955 was that of Joan Palmer and Willie W. Palmer, as administrator of the estate of his minor children, Shirley Marie, Gertha Lene, Lonnie S. and Willie W. Palmer, Jr. In the supplemental petition filed on February 24, 1956, Willie W. Palmer appeared individually seeking judgment for medical bills and automobile property damage. Clearly, this claim had prescribed. See LSA-C.C. Article 3536.
We next take up the question of quantum.
Dr. Lorio, a qualified pediatrician, testified on behalf of the plaintiff as follows: He examined Shirley Marie Palmer on the morning of August 15, 1954, at his home at about 6:45. At that time he found her to be hurt in the back "in an area somewhere in the area between the 8th thoracic and second lumbar." The pain was sensitive to touch and painful to motion as well; the doctor thought then that she would have to be hospitalized but later decided to care for her at home. He did a complete examination on her together with what emergency treatment was necessary. Further examination was made until she was discharged on September 8. He examined her again on August 16 and found her in practically the same condition as she had been the day before. Another examination on August 17 revealed practically the same thing and an examination on the 18th revealed that her *79 injuries were getting a little bit better. She was further improved on the 20th as she was on the 25th. On September 3rd, he stated she seemed to be free from all defects and she was discharged as of that date. He found her to be suffering with pain for a few days after the injury. He knew nothing about her condition after September 3rd, when he discharged her. All he knew about the source of the pain is what had been told to him, i. e., the child had been in an automobile accident that had just happened shortly before they came to his home.
The doctor also examined Gertha Lene Palmer on the morning of August 15, 1954. It so happened that he had just seen this child about an hour previously at which time she had a temperature of 102. She had been brought to him with an upper respiratory infection which, of course, had nothing to do with the later condition. When he examined her the second time, he found her very excited, "moaning and complaining, groaning," however, examination did not reveal any injuries. He could not tell whether there were any internal injuries at that time, but she did seem to be shocked. He found no outward evidence of bruises and, of course, got a history from the parents of the child having been in the automobile accident. He examined her again on August 16, at which time she still had the temperature, but didn't know that she was hurt particularly as he could not tell on examination. According to his records, the child was three years of age and Shirley Marie, about whom he had previously testified, was five years of age at the time of the accident. He saw Gertha Lene again on the 17th at which time she had no more temperature and again on the 20th at which time his findings were "negative." He discharged her on the 23rd.
The morning of the accident, the doctor also examined Lonnie S. Palmer who was with the rest of the family in the automobile accident. This child was two years of age and it was reported to the doctor that he had been knocked from the back seat and sent flying through the air and landed on his head in the front seat. Upon examination the doctor found the child to be in shock and listless. He had a hematoma on the forehead and pressure on the back was painful. The hematoma and the pain in the back were the only physical evidence that the doctor could find besides the shock. The doctor defined a hematoma as follows: "It's a blood clot blood oozing from a vein up under the skin and makes a big knot, like a black eye is a hematoma. Any place that gets hit hard enough makes a big blood clot and makes a knot where the blood accumulates under the skin." It is attended by some swelling from the accumulation of blood in a limited area. The doctor said that he did nothing for Lonnie S. Palmer on August 15, except to give him a complete examination. He saw him again on the 16th at which time his findings were the same and he found the same condition to exist on the 17th and 19th. From the 23rd on, he found him to be improving and on September 3rd his findings were "negligible, nill." He did not see him after September 8th, at which time he discharged him as being recovered.
The doctor on August 15 also examined Willie W. Palmer, Jr. who, at that time, was one year of age. According to the information given the doctor, he was thrown from the seat of the car and fell on his head on the floor. The doctor testified as follows: "Complete examination was done at the time. He was semicomatose rather sobbing type, very unattentive, no outside interest at all. On the occipital region, (that's the back of the head) there was a bruise with a slight concussion. He was kept under observation and as much as three days later, he still did not pay too much attention to outside interests and was still listless. However, there was no bulging of the fontanel, which is a soft spot on the head and I did not think it necessary to do a *80 spinal puncture to determine any intra cranial hemorrhage. He came out of it after the third or fourth day and he responded and then just gradually got better." The doctor defined a comatose condition as "stuperous like, not recognizing things. Semi-comatose is where they recognize us and pass away, not paying much attention to what's going on."
The doctor examined Willie W. Palmer, Jr., also on August 16, 17, 18, 19, 20, 21, 23, 25 and 30th and September 3 and 8th and had not seen him since September 8, 1954.
On August 15, 1954, Dr. Lorio also examined Joan Palmer, the mother of the aforementioned children. He stated that he examined her only because she was in the same accident because it was not within his jurisdiction to treat adults. He stated that upon examination he found some blue spots on her head but that further examination in his office was negative and she was discharged on the 23rd of the same month with no ill effects. He saw her also on August 16 and 17th, 20th and 23rd. At those examinations he did see evidence of bruises but he was unable to tell whether those bruises would cause her to have headaches or whether she had headaches after August 23rd.
On cross examination, the doctor stated that he would not classify the hematoma on the forehead of Lonnie Palmer as severe and that such a condition usually subsides by itself with no treatment necessary. He stated further that he saw no need to hospitalize any of the five individuals whom he examined nor did he see any need to have x-rays taken. He stated that he examined them, so to speak, as a family and that probably the last two visits of those that he saw were just precautionary visits. Those with the head injuries, he said, were the more important ones.
Dr. Lorio had been these children's regular pediatrician and had seen them many times previous to the accident. They did not call him, he stated, at any time after September 8 for treatment in connection with their injuries from the accident.
The next witness to testify was Dr. William M. Moody, physician. He stated that he examined practically the entire Palmer family on October 27, 1954. On this examination he found evidence of a bruise on the forehead of Lonnie S. Palmer, with a small hemotoma underneath the skin. On movement the patient complained of some pain in the back muscles called the soft tissues thereof. He saw Lonnie again on January 19, 1955, and at that time found him to be normal in all respects. On October 27th, Shirley Marie, five, showed what the doctor called some residual of a whip lash injury with some soreness on active and passive movement along the lower portion of the neck where the neck joins the body, and the lower part of the back. The lower part of the back he described as being the lower lumbar region. At that time the doctor thought that the soreness would take about 2 or 3 weeks to heal. He saw her again on January 19, 1955, at which time she still complained of backache but the doctor stated that after talking with the mother, it was noted that the child had been put into a softer bed and the doctor thought that the backache was then due to the type of mattress that she was sleeping on. He stated further that had she stayed on a harder bed, she would have been cured in two or three weeks. January 19, 1955, was the last time that the doctor saw this patient and other than the little back pain she complained of, he did not find any other symptoms.
This doctor also examined Joan Palmer, the mother of the children, on October 27, 1954. The patient at that time complained of a slight but persistent type of headache which could be relieved by means of aspirin and from the history given, it was thought that she had developed post-traumatic headache. This, although being much *81 improved, required from 2 to 4 weeks before leaving entirely. On January 19, 1955, the doctor found this patient entirely normal.
On October 27, Gertha Lene was examined and the doctor found no positive physical findings at that time. He also examined Willie Palmer, Jr., on that date and no residuals were found as to him.
On cross examination, the doctor stated that the headaches of Joan Palmer were relieved by aspirin and that while not absolutely sure, he thought that she was pregnant at the time. Headaches, of course, he classified as being subjective complaints. When questioned further about the headaches, the doctor stated that one or two aspirin would cure them and that in the week prior to his examination, she had had two headaches.
The next witness to testify was Willie W. Palmer, Sr. Lonnie, he said, was thrown from the back seat to the front where his head hit the dashboard and then he hit the floor. The baby fell down on the back of the car on the floor and was still on his head, with his feet up on the seat when he stopped. His wife, who was holding Gertha, was thrown forward and hit her head on the dashboard. He stated that Willie gradually improved but that he stayed in the listless semi-comatose condition about a month.
Shirley Marie continued to have trouble with her back for about four months. After January she did not have any more trouble.
Gertha Lene, at the time of the accident, was upset, shocked and moaning and groaning. He stated that she acted like that several days and that she was actually very sick, but that the effects of the automobile accident cleared up within two or three weeks.
The knot stayed on Lonnie's head about three or four months and his back was sore for two or three months. On October 27, when he saw Dr. Moody, the knot was still there, but on January 19 it had pretty well cleared up except he had a little "peanut." At the date of the trial, March 8, 1956, the "peanut" was completely gone.
His wife, Joan, had bruises on her head and she complained of headaches for which she would take aspirin and Stanback. She found out she was pregnant about three weeks after the accident and worried as to whether the accident would have any effect on the child to be born. She had figured that the baby would be born in April. He stated that his wife was worried from the time of the accident until after the baby was born, and that the headaches continued until after the child was born. He and Joan were married on April 8, 1950. All of the children were born during the marriage except Shirley, who was born previously. Both of them had always acknowledged Shirley as their child and he had the birth certificate changed from Walker to Palmer.
Joan Palmer testified that Shirley Marie was born August 22, 1949, and that she and Willie were married April 9, 1950. At that time of their marriage, she testified there was nothing that would prevent them from getting married; further, they had always acknowledged the child both before and since the marriage and that the rest of the children were born after the marriage. She stated that before the accident they were on the way back from the doctor's office and she was holding the sick baby, Gertha Lene, not paying any attention to Willie's driving. Shirley, Willie and Lonnie were in the back seat and she was in the front seat holding Gertha. After the accident she put Gertha out of her lap to pick up Lonnie, who was on the floor. He had been knocked from the back seat to the front seat. By the time she picked Lonnie off the floor, Willie had picked the baby boy up from the back floor. She said it took about a month or six weeks for the bruises to heal up on her forehead but that she had headaches off and on until after the baby was born. She had the headaches *82 after the last visit to Dr. Lorio and she took aspirin and Stanback for relief. She found out that she was pregnant some 3 weeks after the accident and expected the baby to be born on April 27, 1955. She told Dr. Moody in January of 1955 when she visited him that the headaches were gradually leaving. The headaches that she had after the January 1955 visit were as severe as the ones previous to that time. She said that she had them about as often then as before, that before she had them all day and every day and that after that she would have them in the morning and would take a Stanback or something and they would stop until night.
After the accident, Shirley Marie complained of her back hurting and could hardly stand up straight in the morning. They had to rub her down, rub her back and it was very sore to the touch. She couldn't stand for anybody to touch her back and it stayed sore for about two months. She had not complained since December, 1954.
Gertha Lene was already sick but became frightened and shocked and continued moaning, she said, for about a week.
Lonnie had the knot on his head and the injury to his back. The knot was still there when they took him to see Dr. Moody and he continued to complain after Dr. Moody saw him for about 2 months. The "peanut" was still on his head in January, 1955, but then he was not complaining about it. She says he was still complaining in January, 1955, but the knot she could still feel and that he complained about several weeks after that. At the time of the trial the "peanut" had completely cleared. Willie's condition after the accident was that he "wasn't paying anyone no attention. * * He wouldn't look at you. You would say something to him and he wouldn't see you or nothing." He showed the ill effects of the collision for about three weeks and Dr. Moody in October did not find any ill effects at that time. Since her baby was born on June 5, 1955, she had not suffered any more headaches.
LeRoy Williams was called to testify on behalf of the plaintiffs and stated that Joan Palmer was his nephew's other words, he was Willie's Uncle. This person lived next door to them since the date of the accident. He heard the noise on August 15, 1954 and went over to see them. He stated Joan had a bruise on her head, Shirley Marie was crying, Gertha Lene was crying, Lonnie had a knot on his head and the baby's condition as "not paying no attention, like he was knocked out." Shirley Marie was complaining of her back hurting and it was "months before they got that straight." Gertha Lene was frightened and continued to have an upset condition for about a week or so. Lonnie had a knot on his head and was complaining about his back and rubbing it. He did not know the length of time that he continued to have the knot and complain about his back but said that was months rather than weeks. Willie, the baby, acted like a person that was knocked out or seemed rather semi-conscious. He didn't stay in that condition over a week, he stated.
The plaintiffs asked for the sum of $5,000 for Shirley Marie Palmer and the Jury awarded her the sum of $1,000. The Jury awarded the sum of $100 for Gertha Lene Palmer. The plaintiffs claimed the sum of $1,500 for the injuries to Lonnie S. Palmer and the Jury awarded the sum of $750. The Jury also awarded Joan Palmer, the mother, the sum of $500. We do not think any of these awards are excessive or insufficient. We are of the opinion however that the award of $2,000 to Willie W. Palmer, Jr., is excessive and we feel that $1,000 would be quite sufficient.
For the reasons assigned, the judgment appealed from is hereby amended to disallow the award of $405 to Willie W. Palmer, Sr., and to reduce the award in favor of Willie W. Palmer, Jr., from $2,000 to $1,000, otherwise the judgment appealed from is hereby affirmed.
As amended, the judgment appealed from is affirmed.