ELLIS, Judge.
This suit arose out of an intersectional collision between a Mercury automobile driven by Mrs. Walter H. Mercier and a Continental Trailways bus at the intersection of Terrace Street and Park Boulevard in Baton Rouge, Louisiana. The plaintiffs filed suit seeking damages for certain medical and property damages on behalf of the husband and for the pain and suffering of the wife. Defendants answered denying liability.
Trial was had in the District Court rer suiting in a judgment adverse to the defendants. The facts of the case are not disputed and are relatively simple.
Mrs. Mercier was driving her Mercury on Terrace Street in an easterly direction and had crossed the south-bound traffic lane of Park Boulevard and had almost cleared the north-bound traffic lane when she was struck on the right rear side by a Trailways bus. The Terrace Street and Park Boulevard intersection is controlled by a signal light. The bus driver admitted that he failed to see the red light or the automobile, stating that there were some branches that had obstructed his vision of both and that he had failed to see either until he was within 25 feet of the point of impact.
Judgment was rendered against the defendants by the District Court in favor of Mr. Walter H. Mercier for the damages to his automobile, wrecker service and medical expenses, in the full sum of $1,679.14. The lower court also rendered judgment against the defendants in favor of Mrs. Walter Mercier for her pain and suffering in the sum of $5,000. A suspensive appeal was perfected from this judgment and on appeal the appellant complains only of the award of $5,000 for the personal injuries to Mrs. Mercier.
The plaintiffs answered the appeal and prayed that the $5,000 award by the District Court be adjudged inadequate and seek an increase in the amount awarded Mrs. Walter Mercier, therefore, for the purposes of this appeal the only question presented to the court is the amount awarded by the lower court for the damages suffered by Mrs. Mercier.
Quantum
On the date of the accident, Mrs. Mer-cier was taken to the Lady of the Lake Hospital for emergency treatment. Dr. Thomas C. Davis treated her at the hospital for her injuries which consisted of a contusion of the nose with some bleeding; multiple abrasions about the face; a he- *294 matoma about the right eye; trauma, to the left chest, resulting in pain with breathing and motion; a hematoma of the right elbow, also of the left upper arm; a hema-toma and abrasions of both knees and of the right foot. Dr. Davis admitted her to the Lady of the Lake Hospital on the 19th and she stayed in the hospital until the 24th of August, at which time she was discharged. There were not any fractures noted in the X-rays. Her wounds about the face and arms have healed and the soreness has gone out of the knees. Dr. Davis continued to treat her in regard to a bursa or ganglion on top of the right foot which developed from the hematoma, and she was seen at weekly intervals regarding this right foot and it was aspirated at numerous times to remove the fluid that had accumulated.
She was seen again June IS, 1959 regarding this ganglion on her right foot, and at that time she still had pain with walking, also she had some adhesions around it which Dr. Davis stated will in all probability be there permanently, and there will possibly be some pain there permanently. Plaintiff still had some stiffness in the knee. The abrasions had healed, but she still had some stiffness or pain on walking.
The testimony of Dr. Davis was to the effect that the bursa or ganglion would, in his opinion, result in a permanent injury to the plaintiff, estimating that it would be approximately a ten (10%) percent permanent disability. Dr. Davis stated that the bursa possibly could be removed by an orthopedic surgeon, but he doubted that the adhesions or all of the results of the bursa could be removed by the orthopedic surgeon. The doctor felt that although the ganglion could be removed that the adhesions could not and that, therefore, the injury or the partial disability would persist permanently.
A ganglion as defined in the Lawyers Medical Encyclopedia, page 715, Volume 2, is as follows, to wit:
“Ganglion — A collection or mass of nerve cells other than in the brain or spinal cord. 2. A systic swelling connected with a tendon sheat or joint containing thick jelly like fluid.”
“Adhesion — Abnormal union of one organ or part to another.”
According to Dr. Davis’ testimony the ganglion or bursa was a result of the trauma from the accident and certain connected growths joined the tendons irregularly around the bursa or ganglion which was located on the top of the foot above the instep. Mrs. Mercier was treated by Dr. Davis from the date of the accident on August 19, 1958, and was still being treated on July 7, 1959.
Mrs. Mercier was also examined by an orthopedic specialist, Dr. J. Willard Dowell, on October 3, 1958, and his report and testimony reveal the following:
“* * * On examination of the right foot, there is noted an apparent ganglion on the dorsum of the right forefoot. This area is slightly tender. On examination of the knees, both knees appear to be slightly enlarged, and there is some discoloration of the skin, apparently secondary to the hemorrhage from the injuries which she sustained. The patient complained of pain when pressure was applied over both medial and lateral aspects of both knees. The knees are equal in circumference. No instability is noted in the ligaments of the knee. On examination of the neck there is slight tenderness over the mid-cervical spine. There is a complete range of neck motion present. On examination of the right elbow there is noted some discoloration of the skin. There is a complete range of motion present in the right elbow. X-rays which had been taken at Our Lady of the Lake Hospital was reviewed. X-rays of the dorsal spine and of the cervical spine failed to reveal any evidence of fracture or dislocation. There is noted minimal hyper-trophic degenerative changes, and there is noted slight narrowing of the disc space between C-6 and C-7. X-rays of the knees are negative for evidence of fracture or dislocation. Minimal hypertrophic degenerative changes are noted in both knees. *295 X-rays of the facial bones revealed no evidence of fracture. As the patient’s physical findings suggested the possibility of a rheumatoid arthritis, a sedimentation rate was obtained at the Stanocola Medical Center. This sedimentation rate is reported at 35 millimeters per hour which is a moderate elevation over normal. This patient from her history and present physical findings sustained a sprain of her neck, contusion of the upper back, bruising of both knees with evidence of some hemorrhage having occurred about one knee, and a ganglion of the right foot. A ganglion is usually not due to trauma, but according to Mrs. Mercier this ganglion was not present prior to the accident, and this is verified by Dr. Irwin. In regard to treatment, I believe that the only adequate treatment for the ganglion is its * * * I have ‘incision’. It should be excision. I would suggest treating the sprains which she incurred with the use of heat. I believe she also should be given arthritic drugs such as salicylates as I do feel that she has a low grade rheumatoid arthritis. I estimate this patient will be partially disabled for an additional three to four months * * * I estimated she would be disabled an additional three to four months I state in my report, partially disabled. She had this injury which was some five weeks-six weeks old at the time I saw her I believe. I felt she had been disabled six weeks and would probably be disabled an additional three to four months. The percentage disability is hard to give on her because of the multiple nature — she had so many places injured, — and I am sure the pain was a factor in it. I would say at the time I saw her that the over-all disability was probably somewhere around fifteen per cent, and I felt this on the basis of the body as a whole. I didn’t feel it was a permanent disability but I would estimate her disability at that at that time.”
The defendants have cited numerous awards for various types of injuries which we find are inapplicable to the case at bar as not reflecting injuries or treatment similar to that of the plaintiff in the case at bar.
The plaintiff was still disabled as of the time of the trial and had an estimated ten to fifteen per cent disability by the doctors testifying at the trial. Although the result of the injury was not considered to be extremely serious and an operation under general anesthesia could remove the ganglion, the disability would not be completely cured by the operation since the bursa had caused adhesions. The plaintiff was rendered unconscious by the force of the collision and suffered numerous cuts and bruises. She required sedation for several weeks following the accident as part of her treatment. The injuries to her knees and to her foot required that the doctor perform an aspiration. This procedure required the doctor to place a large needle in the area where the fluid is located near the joint and withdraw the fluid. Dr. Davis found that the aspirations of the foot did not alter the condition and the ganglion persisted.
Considering the uncontradicted testimony of Dr. Davis that the adhesions from the ganglion would not be entirely corrected by surgery and also that of -Dr. Willard Dowell as to the severe trauma suffered by the plaintiff as well as the pain and suffering as a result of the injuries and treatment, we cannot say that the award of the lower court was manifestly erroneous. The plaintiff according to her own testimony still suffered pain in her right foot at the time of the trial which was approximately 11 months after the accident.
The pronouncements made in Distefano v. Delta Fire & Casualty Co., La.App., 98 So.2d 310, are particularly applicable in this case, and we quote a portion of the opinion as follows:
“Much discretion must be left to the trier of fact in awards for personal injuries, which are of necessity somewhat arbitrary in nature, Article 1934(3), L.S. A. — Civil Code, Duree v. State, La.App. 1 Cir., 96 So.2d 854; although, of course, such awards should be made with some degree of uniformity with those made for similar losses, allowing for the great var *296 iation in the facts and circumstances surrounding each injury, Higginbotham v. Frazier, La.App. 1 Cir., 92 So.2d 89.
“We are unable to say that the award of the District Court herein was either manifestly excessive or manifestly insufficient, Higginbotham v. Frazier, La.App. 1 Cir., 92 So.2d 89, Palmer v. Fidelity & Casualty Company of New York, La.App. 1 Cir., 91 So.2d 77, Wilson v. Yellow Cab Co., La.App. 2 Cir., 64 So.2d 463, Lovelace v. Gowan, La.App. 2 Cir., 52 So.2d 97, Middleton v. Rheem Mfg. Co., La.App., Orl., 34 So.2d 271.”
For the reasons set forth the judgment of the lower court is hereby affirmed at appellant’s costs.
Affirmed.