REGAN, Judge.
The plaintiff, Vincent J. Vastóla, as administrator of the estate of his minor son, Vincent A. Vastóla, filed this suit against the defendant, Insurance Company of North America, endeavoring to recover the sum of $11,076.06, representing damages to property and for personal injuries which he asserts were incurred by his son as the result of the negligence of the defendant’s insured, George Morris, in the operation of his motor vehicle. Subsequently, the plaintiff amended this petition to explain therein that he was entitled to recover individually for the damage to the motor bike on which his son was riding when the accident occurred, and for the sums expended for his son’s medical treatment and for the replacement of his eye glasses.
The defendant answered and denied the accusations of negligence pleaded by the plaintiff. In addition thereto, it tentatively asserted that the proximate cause of the accident was the negligence of the plaintiff’s son in operating his motor bike.
From a judgment of the lower court in favor of the plaintiff individually in the amount of $245.08, and in favor of the plaintiff as administrator of the estate of his minor son in the amount of $1,750.00, the defendant has prosecuted this appeal.
The record discloses that on June 19, 1964, the plaintiff’s son, Vincent A. Vastó-la, was operating a motor bike in a northerly direction or toward the lake in Hickory Avenue in Harahan, Louisiana. Hickory Avenue runs in a north-south direction, contains two lanes separated by a white medial line, and accommodates two-way traffic.
When the plaintiff’s son approached the intersection of Hickory Avenue and Sauve Road, which runs perpendicular to Hickory Avenue, he noticed that the road was blocked approximately one quarter mile ahead by a train and that traffic had accumulated from the railroad crossing back to approximately the intersection of Sauve Road. There were no other intersecting streets between the railroad crossing and , Sauve Road.
Instead of stopping behind the line of traffic, the plaintiff’s son drove on the left side of the line of vehicles in the direction of the railroad crossing. While the defendant insists that the plaintiff’s son was operating his vehicle on the white line separating the two roadways, the evidence is *607 quite nebulous as to whether he was directly on the line, to the left of the line, or slightly to the right of the line.
In any event, simultaneously, a pickup truck owned by the defendant’s insured, Underwater Services, Inc., and driven by George Morris, was endeavoring to exit from a parking lot located on the right side of Hickory Avenue. In order to facilitate this exit, a truck owned by the Louisiana Department of Highways had backed up in the line of parked traffic so as to create an opening for the pickup truck to pass between them and enter the southbound roadway. When the pickup truck was about to enter the southbound roadway, the plaintiff approached on his motor bike, and of course the two vehicles collided in about the center of Hickory Avenue. It is conceded by counsel for both litigants that because of the presence of the Department of Highways’ truck, which possessed a can-' vas covered body, neither driver was able to observe the other except for a split second before the collision.
The plaintiff’s son testified that he was driving approximately 20 miles per hour when the collision occurred, and the driver of the truck asserted that he was “creeping” through the opening which we have described above.
The initial question posed for our consideration by the defendant is whether the operator of the pickup truck was guilty of negligence in driving between the northbound traffic which, as we have said, was stopped, because of the train, in Hickory Avenue.
The record clearly reveals that the defendant’s insured could not see beyond the Department of Highways’ truck to his left, and also all traffic behind that truck was obliterated from his field of vision thereby.
The negligence of the defendant’s insured is, in our opinion, established by virtue of the rationale emanating from R.S. 32:124, which reads:
“The driver of a vehicle about to enter or cross a highway from a private road, driveway, alley or building, shall stop such vehicle immediately prior to driving onto a sidewalk or onto the sidewalk area extending across any alleyway or driveway, and shall yield the right of way to any pedestrian as may be necessary to avoid collision, and shall yield the right of way to all approaching vehicles so close as to constitute an immediate hazard.”
In the case of Scruggs v. V. Frank Lynn Co.,[1] the organ for the court reasoned that a driver of a truck emerging from a narrow, blind alley into a busy street was engaged in a dangerous maneuver which required all the care, caution and prudence that the driver was capable of exercising. The court added that he should have entered the street slowly and stopped in a position where he could clearly see in both directions. He omitted to exercise the care required of him under these circumstances and his failure to do so was gross negligence and, of course, the proximate cause of the accident.
The facts of this case disclose that the defendant’s insured was unable to see whether any traffic was emanating from the direction in which he was endeavoring to turn; therefore, he should not have moved until he was able to definitely ascertain the location of oncoming traffic.
The defendant alternatively argues that the plaintiff’s son was guilty of contributory negligence in passing along the side of the stopped vehicles.
The defendant predicates his argument as to the negligence of the plaintiff’s son on the analogy of cases concerned with the rights and obligations of motorists when one approaches from a less favored *608 thoroughfare while several lanes of traffic are stopped on the favored thoroughfare.[2]
The cases cited by the defendant, however, are not analogous to the facts hereof. This is pointed out clearly, as noted in the trial judge’s reasons for judgment, because there were no intersecting streets between the railroad crossing and Sauve Road, so that the plaintiff’s son was not obligated to anticipate the entry of vehicles from an intersecting street into his pathway.[3]
The defendant insists that the question of negligence per se on the part of the plaintiff’s son is also involved by virtue of the facts hereof. He contends that the son was guilty of negligence per se in violating R.S. 32:76, which prohibits driving on the left side of the highway when approaching within 100 feet of a railroad crossing. However, the record discloses that the plaintiff was struck at a point 50 or 60 feet before the location of the yellow line which prohibits passing; therefore, he was not violating the rationale of this statute when the accident occurred.
The defendant also argues that the plaintiff’s son violated R.S. 32:73, which provides that a vehicle overtaking another vehicle moving in the same direction shall pass to the left thereof at a safe distance, and shall not again drive to the right side of the roadway until safely clear of the overtaken vehicle. This statute is not applicable to the facts hereof; it simply regulates the duties of a passing vehicle vis-a-vis the vehicle being overtaken.
Finally, the defendant argues that the claim of the plaintiff, Vincent A. Vas-tola, individually for the special damages sustained in the collision has prescribed, since they were asserted in an amended petition filed more than one year after the occurrence of the accident. It is conceded that the original petition was timely filed before the passing of, the one year prescriptive period provided by Article 3536 of the Civil Code. In support of the defendant’s contention, it relies upon the rationale emanating from the case of Palmer v. Fidelity & Casualty Company of New York,[4] wherein the court reasoned that an amended petition filed individually by a father more than one year after the date of the accident endeavoring to recover special damages was barred by the prescription of one year. The Palmer case is not applicable to the facts hereof for two reasons. First, subsequent to the decision in that case, the Louisiana legislature enacted the Code of Civil Procedure, especially Article 1153 which provides that when an action asserted in an amended petition arises out of the conduct, transaction or occurrence set forth or attempted to be set forth in the original petition, the amendment relates back to the date of the filing of the original pleading. Thus, when the Palmer case was decided, Article 1153 was nonexistent, but it now takes precedence over any jurisprudence to the contrary.[5] Second, even in the absence of Article 1153, the Palmer case is distinguishable on its facts. In that case, the father made no claim whatsoever before the termination of the one year prescriptive period for the special damages sustained by him on behalf of his minor child. However, in the present case, the father sued, as administrator of his son’s estate not only, for his son’s injuries but also for *609 the medical and other special damages incurred by him. Therefore, the amended petition merely realigns the parties so that the proper litigant is suing for that which he is entitled to recover.
The plaintiff answered the defendant’s appeal, requesting an increase in the award to the son for his personal injuries from $1,750.00 to $5,000.00. However, under the rationale of Gaspard v. Le Maire [6] and the jurisprudence emanating therefrom, a trial court’s award of damages is reviewable only upon a clear abuse of its discretion and, in our opinion, such abuse is not present herein.
In this case, the plaintiff’s 15 year old son incurred lacerations to his right forearm, middle finger of his right hand, and right thigh, all of which required suturing. He also incurred damage to the tendon of the middle finger, and he was required to wear a splint thereon for approximately one month. Medical treatment was administered from June 19th to September 1st, and consisted of 19 office visits, 12 of which were for physical therapy. His injuries consist of a loss of 10% of the backward extension of the middle finger on his right hand and two scars on his right thigh, which are, in general, covered by his clothing.
In view of these facts, we are convinced that the lower court did not abuse its discretion in awarding the plaintiff’s son $1,-750.00 for the aforementioned injuries. In other words, no reason exists for either increasing or decreasing the award.
However, one aspect of the lower court’s judgment is erroneous and therefore requires an amendment. It awarded $90.00 to the plaintiff individually for his minor son’s lost wages. This amount should have been awarded to the father as administrator of the son’s estate and not to him individually. To this extent, the decree will be amended.
For the foregoing reasons, the judgment of the lower court is amended by awarding the amount of $1,750.00 plus the amount of $90.00 to Vincent J. Vastóla as administrator of the estate of his minor son, Vincent A. Vastóla, and by awarding the amount of $155.08 to Vincent J. Vastóla individually. As thus amended, the judgment of the lower court is affirmed.
All costs hereof are to be paid by the defendant.
Amended and affirmed.

. La.App., 6 So.2d 96 (1941).

. In support of this argument, the defendant cites the cases of Indovina v. Logrande, La.App., 70 So.2d 456 (1954) and Schroeder v. Mounes, La.App., 52 So.2d 67 (1951).

. See also Josey v. Granite State Fire Insurance Company, La.App., 122 So.2d 303 (1960), where the court held that a motorist overtaking and passing on a highway is not required to anticipate the negligence of another motorist in proceeding out into the lane being used for passing. See also Scruggs v. v. Frank Lynn Co., La.App., 6 So.2d 86 (1941).

. La.App., 91 So.2d 77 (1956).

. The rationale of the Palmer case is questionable. See Reeves v. Globe Indemnity Company of New York, 185 La. 42, 168 So. 488 (1936).

. 245 La. 239,158 So.2d 149 (1963).