539 So.2d 915 (1989)
MUSSO'S CORNER, INC.
v.
A & R UNDERWRITERS, INC. d/b/a Presidential Fire & Casualty Company.
No. 88-CA-0809.
Court of Appeal of Louisiana, Fourth Circuit.
February 16, 1989.
*916 Joseph R. McMahon, Jr., New Orleans, for defendant-appellant.
Robert G. Harvey, New Orleans, Salvatore Panzeca, Metairie, for plaintiff-appellee.
Before LOBRANO, WARD and WILLIAMS, JJ.
WARD, Judge.
This is a suspensive appeal taken by A & R Underwriters, Inc. from a final judgment homologating an umpire's award in an insurance arbitration proceeding.
Musso's Corner, Inc. submitted a claim to its insurance carrier, A & R Underwriters, Inc., d/b/a Presidential Fire and Casualty Co. for fire damage to its business premises and fixtures located at 2542 Canal Street. Presidential had an adjusting firm and a building contractor assess the damages and costs of repair to the Musso's building. The adjusting firm estimated the costs of repair at $209,000, while the contractor submitted a bid of $131,020 for repairs. Musso's obtained repair appraisals of $248,396, $244,857 and $222,200. On January 2, 1987 Presidential tendered $131,020, the lowest estimate, to Musso's in full payment for the fire loss sustained on October 21, 1986 and gave Musso's "the right to accept this payment and then proceed with litigation or otherwise to make a claim for such additional loss you may feel you have sustained within Coverage A of the policy." Section A of the policy describes coverage for the building only. Musso's accepted the funds and immediately began to repair the premises.[1]
The insurance policy contained arbitration provisions, and four months after Musso's accepted the funds, the parties each selected an appraiser to begin the arbitration process. When Presidential refused to proceed any further with arbitration because of Musso's alleged fradulent conduct in overinflating its claim for other losses under the policy, Musso's obtained a court order on August 20, 1987 appointing a neutral umpire pursuant to the policy's arbitration provision. Presidential was served with notices of the appointment and the first meeting between the appraisers and the umpire. Presidential declined to participate in the meeting and responded to the appointment by filing a motion to vacate, which was ultimately denied.
Upon denial of its motion, Presidential filed exceptions in opposition to the homologation of the umpire's award of $91,614.25.[2] The trial court overruled Presidential's *917 exceptions and finalized the judgment homologating the award. Presidential appeals the arbitration award judgment.
By its first assignment of error Presidential argues the trial court erred in overruling its exceptions of no right and no cause of action to enforce the arbitration award. Presidential argues that because Musso's failed to obtain a court order under R.S. 9:4203 compelling Presidential to submit to arbitration, the Trial Court did not have jurisdiction to appoint the umpire; hence, there was no arbitration of the dispute, no valid award and no cause of action to homologate the award.
R.S. 9:4203 provides that when a party is aggrieved by the failure or refusal of another party to arbitrate, the aggrieved party may seek an order from the court directing that arbitration proceed in accordance with the arbitration agreement. Nonetheless, the arbitration provision of the Presidential insurance policy reads:

Appraisal. In case the insured and this company shall fail to agree as to the actual cash value or the amount of loss, then, on the written demand of either, each shall select a competent and disinterested appraiser and notify the other of the appraiser selected within 20 days of such demand. The appraisers shall first select a competent and disinterested umpire; and failing for 15 days to agree upon such umpire, then, on request of the insured or this company, such umpire shall be selected by a judge of a court of record in the state in which the property covered is located....
When Presidential steadfastly refused to proceed to the next step of arbitration and when Musso's petitioned the trial court for appointment of a neutral umpire, Musso's did what was necessary to comply with the insurance policy, rather than with R.S. 9:4203.
North Central Utilities, Inc. v. East Colombia Water District, 449 So.2d 1186 (La. App. 2d Cir.1984) addressed the issue of which controls, the statutory requirement for a court order directing that arbitration proceed or the arbitration agreement of the parties permitting another course of action. The court found that R.S. 9:4203 was permissive rather than mandatory, concluding that the statute does not require that such an order be obtained prior to one of the parties to the arbitration agreement proceeding in accordance with the terms of that agreement.
In this case, arbitration proceedings commenced when each party selected an appraiser. As a consequence, even the applicability of R.S. 9:4203 is questionable because that statute applies when parties refuse to begin arbitration. But the crucial fact is that the arbitration agreement spelled out the course of action to follow if, after appointment of appraisers, the appraisers could not agree on a neutral umpire. After appointing an appraiser, Presidential refused to proceed further to appoint an umpire. This action is the equivalent of a failure to agree on a neutral umpire, and the arbitration clause in the insurance policy prepared by Presidential gives either the "insured" (Musso's) or "this company" (Presidential) the right to request the Court to make the appointment. Nothing in that arbitration agreement requires either notice, although one was given, or a contradictory hearing. Musso's followed the letter of the arbitration agreement, which is controlling here. Thus, this assignment of error is without merit.
Presidential next contends the trial court erred when the Court overruled Presidential's exceptions of no cause and no right of action, arguing Musso's waived its right to continue arbitration proceedings by commencing litigation over other claims arising out of the same occurrence and covered by the same policy. Presidential's argument is not without some support.
*918 Although R.S. 9:4201 states that written arbitration agreements are "valid, irrevocable, and enforceable", Louisiana courts have held that arbitration rights given by contract may be waived, by express words or by necessary implication. Sim v. Beauregard Electric Cooperative, Inc., 322 So.2d 410 (La.App. 3d Cir.1975).
However, due to a strong policy favoring arbitration, Louisiana courts have found waiver only in a few limited situations. Matthews-McCracken Rutland Corp. v. City of Plaquemine, 414 So.2d 756 (La. 1982). In Sim, supra, the Supreme Court held that a party waived its right to invoke arbitration by filing a suit seeking damages for breach of the contract; in I.D.C., Inc. v. McCain-Winkler Partnership, 396 So.2d 590, 595 (La.App. 3d Cir. 1981), and the Third Circuit held a party waived arbitration by filing a reconventional demand.
Had Musso's commenced litigation prior to instituting arbitration, even though the suit sought damages other than for building damage, Presidential's argument of a waiver of arbitration would be correct. However, the facts of this case produce a different result. Prior to the rendition of the umpire's report on November 16, 1987, and as a result of Presidential's denying Musso's claims for business interruption losses and building content losses resulting from the fire, Musso's filed suit seeking recovery of those losses.
When Presidential made a tender of payment for losses to the building, the tender did not purport to pay for any other losses arising from the fire nor did it prohibit Musso's from resorting to other means to assert recovery for the amount in dispute. Presidential obviously considered the prospect of arbitration as one means to resolve the dispute. In a letter to the Commissioner of Insurance, Presidential noted:
... At the present time, according to the policy conditions, the insured has selected an appraiser and the Company has selected an appriser. The two appraisers will select an umpire to arbitrate the loss, and the decision of this panel will be binding on all parties.
Through its tender of payment for the fire damage to the building and by its letter to the Insurance Commissioner, Presidential clearly indicated it considered the claim for losses to the building separate and distinct from the business interruption and building content claims, approving arbitration of the former, while denying arbitration of the latter. As a result Presidential cannot now claim that Musso's waived its right to arbitrate damages for losses to the building by filing suit to recover its claims for business interruption and building content losses.
Cajun Electric Power Coop., Inc. v. L.P. & L. Co., 324 So.2d 475 (La.App. 4 Cir.1976) allowed splitting of issuesi.e., arbitratable and non-arbitratable, even though the causes arose from one and the same incident. The record in this case and case law support the trial court's finding that Musso's filing suit for other losses under the policy did not constitute a waiver of arbitration rights.
Lastly, Presidential contends the Trial Court erred in overruling its motion to vacate the award because, it alleges, Musso's representations of loss were fradulent, rendering the entire insurance policy null and void. Presidential's policy provides:
Concealment, fraud. This entire policy shall be void if, whether before or after a loss, the insured has willfully concealed or misrepresented any material fact or circumstances concerning this insurance or the subject thereof, or the interest of the insured therein, or in case of any fraud or false swearing by the insured relating thereto.
Presidential relies on George Engine Co., Inc. v. Southern Shipbuilding Corp., 350 So.2d 881 (La.1977) to support its argument that the Court should have permitted Presidential to show fraud and then rule on the validity of the insurance contract prior to homologating the award. In George Engine, the Supreme Court held that when a contract containing arbitration provisions is alleged to be void ab initio, the validity of the contract is a question for the courts to decide before arbitration may commence.
In this instance, Presidential has made allegations of "material misrepresentations" *919 by Musso's in its computation of the building's content loss, misrepresentations which Presidential claims voided the policy. There are no allegations of fraud or duress in the inception of the insurance contract; and the defense of fraud was raised only after arbitration and then directed only at Musso's building content loss claim. These facts alone distinguish this case from George Engine, where before arbitration commenced, George Engine filed suit to rescind the contract. Thus, while Presidential may raise a defense of fraud against Musso's claims for building interruption and contents losses, it cannot attack the arbitration award but rather raise that issue in another proceeding.
When as in this case, a petitioner seeks homologation of the arbitration award, the action is not based upon the original cause of action giving rise to the dispute between the parties but rather upon the award of the arbitrator or umpire. 6 C.J.S. Arbitration § 138 p. 382 (1975). R.S. 9:4210 limits to four the grounds on which to challenge an arbitration award. The only one pertinent here is Section A.
La.R.S. 9:4210. Motion to Vacate award; grounds; rehearing
In any of the following cases the court in and for the parish wherein the award was made shall issue an order vacating the award upon the application of any party to the arbitration.
A. Where the award was procured by corruption, fraud, or undue means.
The fraud referred to in Section A does not encompass allegations of fraud unrelated to either the arbitration agreement or the arbitration process. Clearly, for the reasons previously discussed, the award was not procured by either corruption, fraud or undue means. We, therefore, affirm the judgment of the Trial Court and assess all costs of this appeal to Presidential.
AFFIRMED.
NOTES
[1] Musso's premises enjoyed a zoning status of "non-conforming" use. Because the status would be lost if the business was non-operational for 6 months, Musso's was forced to make repairs quickly and resume business to preserve its right to operate under the zoning code.
[2] In computing the award, the umpire adopted the $209,850 estimate of Presidential's first appraiser. To that figure he added $10,048.00 (cost of architectural plans for repair work) $936.25 (cost of city building permit), and subtracted $131,020 (Presidential's payment to Musso's) which results in a balance of $89,814.25. The Trial Judge assessed one-half of the umpire's fee of $3,600 to Musso's which results in the total award of $91,614.25.