388 So.2d 851 (1980)
MERCHANTS TRUST AND SAVINGS BANK
v.
Vincent FRANZONE.
No. 11062.
Court of Appeal of Louisiana, Fourth Circuit.
August 25, 1980.
Rehearing Denied October 16, 1980.
*852 Bruce M. Danner, Philip S. Brooks, New Orleans, for plaintiff.
Samuel W. Ethridge, Kenner, for defendant.
Before SAMUEL, REDMANN and SARTAIN, JJ.
REDMANN, Judge.
Plaintiff bank appeals from a judgment which dismissed its suit to avoid two leases between itself and defendant, its one-time vice-president and president (and a director and one of its controlling shareholders). The issue is whether defendant's fiduciary obligation to the bank prevented his contracting as he did. Because the contracts seem insupportably unfair on their face and defendant did not bear his burden of proving their fairness, we reverse.
In 1950, plaintiff bank obtained a 39-year lease, cancelable at its option, upon a small building and an 84' × 125' lot on the corner of Airline Highway and Williams Boulevard in Kenner.
In 1964, the bank subleased the building less its storage vault, two rear rooms and attic (and "subject to" existing subleases), but no parking area, to defendant Franzone for the same rent that the bank paid for the whole building and lot. Evidently factors other than inflation had made the lease rights more valuable than the rent payable, and the bank collected the benefit of its 14-year-old lease bargain in the form of "rent-free" vault, offices, attic, and parking areas and perhaps also collected rents from earlier subleases. Franzone, of course, obtained office space for the rent he paid (then $378 per month under the original lease's consumer price index formula).
In 1972, Franzone "subleased" to the bank the "rear portion (all of building excluding the portion thereof now occupied by the Convenience Food Store)"-again for the same rent (by then $435 per month). Four things must be observed about this "sublease." First, it appears, although one cannot be certain from the record, that this "sublease" in fact returned to the bank little or no space the bank did not already have. It had reserved to itself the storage vault, two rear rooms and the attic. For all that the record shows, the Convenience Food Store may have occupied all the rest of the building. Second, Franzone had no entitlement to lease "all" the building save the store in any case because he himself had no right of occupancy for all the building save the store. Third, no board of directors and no executive committee resolution authorized this contract for the bank. Fourth, Franzone had become one of the controlling shareholders of the bank just before this contract that appears to give Franzone, rather than the bank, the benefit of the bank's by then 22-year-old lease bargain. Previously, Franzone paid the bank's rent in full in return for a substantial part of the bank's space; now the bank paid Franzone's rent in full for a small part, if any, of Franzone's space (all of which came from the bank).
That 1972 "sublease" was only for the two years that Franzone's own 1964 sublease from the bank would remain enforceable. It must also be noted that although Franzone's 1964 sublease authorized year-to-year renewals beginning in 1974, it also gave either party the right to terminate at *853 any time after 1974 by 60-day notice. Thus, if the bank were getting needed space back from Franzone by the 1972 contract for a reasonable price (on a theory that what the bank got back was worth 100% of the rental), then reasonable management would have demanded in 1974 the termination of the 1964 lease and thus defeated any year-to-year extension. The bank should then have had all the space it rented to Franzone. Instead, management agreed to pay to Franzone 100% of the whole building and land's rent for the small part of the space, if any, that Franzone returned to the bank.
Six years later, in 1978, those terminable-at-will arrangements were replaced by two contracts, each called a lease and each on the same standard form (save that the lease to the bank obliged the bank to pay "all utilities"). These two contracts gave Franzone rent-free the whole building except the vault, two rear rooms, and attic for the remaining 11 years, 11 months of the 39 years of the bank's basic lease from the owner.
Three further items are noted. First, Franzone had by then become president of the bank. Second, the board of directors' resolution was that the bank "extend the lease "(emphasis added); there was no resolution authorizing the bank to lease back from Franzone. Third, the description of the property being leased almost verbatim tracked the description of the 1964 sublease to Franzone with, however, a curious omission: after reciting the building and its street address, instead of "consisting of office space ... save and except the storage vault [etc.]," the description omitted "office space ... save and except" and therefore reads "consisting of the storage vault, the two extreme rear rooms adjacent to the men's rest room, and the attic of said building, which the lessor reserves to itself for its own use and purpose" (emphasis added). Despite the important omission, the description indirectly refers to a lease by the bank to Franzone and not vice versa. Yet the Franzone-to-bank lease of 1978 uses the identical description (including "which the lessor reserves for its own use"). Although in 1964 the bank had leased the whole building to Franzone save the vault, etc., in 1978 somehow Franzone is leasing to the bank nothing except what the bank had always reserved "for its own use"-and the directors' resolution was only to "extend" the previous lease.
Franzone's argument in this lawsuit is that the contracts were advantageous to the bank because the neighborhood deteriorated into a high crime area, increasing maintenance costs and causing the building to be vacant most of the time. Yet he did not provide evidence to support this argument. His records treated all his rental properties as one, and he could not show what maintenance costs he spent or what rentals he received on what property. It must further be recalled that the bank's original lease from the owner was cancelable.
We pretermit the implications of neither the 1972 nor the 1978 lease by Franzone to the bank's being approved by the board of directors or by the executive committee. Were there approval by the board, those leases must in any case be invalidated.
Because of Franzone's fiduciary relationship to the bank, it was his burden to prove the fairness of his transactions with the bank, House of Campbell v. Campbell, La.App. 4 Cir. 1965, 172 So.2d 727, and he did not carry that burden. It appears, in the absence of proof of fairness, a betrayal of Franzone's fiduciary duty that the bank should end up paying to Franzone 100% of the entire rental in 1978 for the space it had reserved to itself from its earliest lease to Franzone in 1964; that seems to be a lease of no space whatever to the bank. Similarly, the 1972 lease by Franzone to the bank appears facially insupportable in that Franzone did not prove even that the 1972 lease in fact leased any space whatever to the bank, much less that any space leased was worth 100% of the full building and lot's rent. Also apparently unfair to the bank was management's (Franzone's?) failure to exercise its right to cancel the lease to Franzone, rather than return 100% of Franzone's *854 rent for little or none of the space the bank rented to Franzone.
There may be an explanation of these leases as advantageous to the bank, but Franzone did not supply it by reasonable proof as required by law.
The judgment appealed from is reversed, and there is judgment for plaintiff avoiding the leases by Franzone to the bank, and there is further judgment for the bank against Franzone for all rent paid by the bank to Franzone since 1972, with legal interest from the date of each payment, all at Franzone's cost. The matter is remanded to the trial court solely for the purpose of determining the amount to be paid by Franzone to the plaintiff in the event the parties cannot agree thereon.
REVERSED AND REMANDED IN PART.