BOUTALL, Judge.
This case arises from a dispute over a lease. From judgment dismissing the plaintiff’s rule to evict and ordering the parties to submit to arbitration as provided in the lease, the plaintiff has appealed.
The issues before this court are: whether dismissal of the eviction proceeding was correct; and, as to arbitration, whether an arbitrable controversy existed and whether the defendant’s right to arbitrate was waived.
On June 1, 1977, Vincent Franzone (“Franzone”) and three co-owners leased for forty years a parcel of real estate in Kenner to Merchants Trust and Savings Bank (“the Bank”). Franzone was at that time president and shareholder of the Bank; the co-owners were also shareholders. Franzone and his co-owners sold the Bank, subject to the lease in question, to James Queyrouze (“Queyrouze”) and others on August 31,1978. Queyrouze became president of Merchants Trust and Savings Bank while Franzone became president of the First Progressive Bank.[1] When these proceedings began, Franzone had become sole owner of the real estate.
The fourth section of the lease sets out provisions for rent. Paragraphs 4.1 through 4.5 provide for an “Annual Minimum Rental” of $35,000, to be in effect for the first five years from the date of signing the lease. The annual rent is to be increased at the beginning of each subsequent five year period if the Wholesale Price Index has risen during the preceding five year term. The method for calculating the increase is specifically set out. Paragraph 4.5 concludes with an arbitration provision as follows:
“... In the event of a dispute, such dispute shall be submitted to arbitration under the rules of the American Arbitration *1194 Association and such finding shall be binding on the parties.”
The section regarding rent provides for additional monthly rent tied to an increase in the prime rate and for arbitration of disputes, as follows:
“4.8 If, during any month of the first ten years of the term hereof, commencing with the inception of this lease, the prime rate charged from time to time by The Bank of New Orleans & Trust Company, New Orleans, Louisiana, exceeds ten per cent (10%) per annum, then during such month or part thereof that such prime rate exceeds 10% as aforesaid, Lessee shall pay Lessor rent in addition to the Annual Minimum Rental (Additional Rent) at the rate of $21.46 per month for each one-eighth percent that said prime rate exceeds ten percent. Such Additional Rent shall be payable in addition to and over and above all other payments to be made by Lessee to Lessor hereunder. Additional Rent shall be payable with the Annual Minimum Rental on the first day of each calendar month during the first ten years of the term hereof, based on the prime rate in effect as of the last day of the previous month. If it is subsequently found that the amount of Additional Rent paid was incorrect, an adjustment thereof shall be made in the next monthly rent installment.
“4.9 In the event of any dispute between the parties as to the amount of the Annual Minimum Rental payable hereunder, or as to any other matter arising under this Section 4, such dispute shall be determined by arbitration as provided in Section 4.5 above. During any such arbitration, if the amount of rent is in dispute, Lessee shall continue to pay rent at the rate theretofore applicable; provided, however, that if under such arbitration it is determined that Lessor is entitled to additional rent, Lessee shall pay Lessor, within five (5) days from the date of such determination, the additional rent owed for the months which have elapsed during which Lessee paid rent at the rate theretofore applicable, together with interest thereon at the prime rate referred to in Section 4.8 but not less than 8% per an-num.”
Section 17 of the lease contains default provisions. Paragraph 17.1(a) provides that failure to pay the rent or any part of it after ten days’ notice constitutes a default; and paragraph 17.3(a) allows the lessor to cancel or terminate the lease upon default. However:
“17.4 The failure of Lessor to enforce any term, condition or agreement hereof by reason of its breach by Lessee shall not be deemed to avoid or affect the right of Lessor to subsequently enforce such term, condition or agreement whether by reason of the same or a subsequent breach.”
The prime rate rose above 10% on October 31, 1978. According to Paragraph 4.8 of the lease additional rent was due as of November 1. On January 16, 1981, Fran-zone for the first time made written demand for the additional rent. On February 17 he declared the Bank to be in default and demanded possession in 30 days. To both communications the Bank replied with requests for a specific dollar figure for the amount due, which Franzone ignored. The Bank’s answer based its defense on lack of demand and failure to refer the dispute to arbitration; it further petitioned the court for a declaratory judgment interpreting paragraphs 4.5, 4.8, and 4.9 of the lease. The Bank prayed that the court declare Paragraph 4.8 null and void, because it was understood by the parties that the provision would be in effect only during the period prior to Franzone’s obtaining permanent financing for the property. The Bank further alleged that:
“... lessors were 'insiders,’ and wearing two hats, and accomplished their needs with Clause 4.8 of the lease while they were owners, officers and directors of the bank but now should be estopped from the enforcement of the self-serving 4.8 Clause against the new owners and stockholders of the Merchants Trust and Savings Bank.”
*1195 Trial was held on March 31, 1981 after which the judge dismissed the eviction proceedings and ordered arbitration. This appeal followed.
Leases in Louisiana are governed by the general law of contracts and by special rules applicable to lease. LSA-C.C. Title IV, Of Conventional Obligations, and Title IX, Of Lease. The issues raised in this appeal may be resolved solely on the basis of article 1901, which states:
“Agreements legally entered into have the effect of laws on those who have formed them.
“They can not be revoked, unless by mutual consent of the parties, or for causes acknowledged by law.
“They must be performed with good faith.”
The record reveals that the lease in question was acknowledged by both the sellers and the purchasers of the Merchants Trust and Savings Bank in the sale of the capital stock of the bank. Both parties were represented by counsel and had an opportunity to examine and revise the lease if need be. The transaction was admittedly at arms’ length between knowledgeable and experienced businessmen. The lease clearly required arbitration of any dispute over rent. The jurisprudence favors maintaining rather than dissolving leases, and ambiguities are resolved in favor of the lease. Tullier v. Tanson Enterprises, Inc, 367 So.2d 773 (La.1979), Wilson v. Cost + Plus of Vivian, Inc., 375 So.2d 683 (La.App.2d Cir. 1979).
Neither party followed the rules for paying rent upon which they agreed in writing. The Bank was certainly aware that the prime rate charged by the Bank of New Orleans and Trust Company rose to more than 10% on October 31, 1978, and that additional rent was due but chose to disregard clause 4.8. Franzone chose to circumvent the arbitration provision and proceed under the default provisions. Although the rent and default provisions are in conflict to some extent, we interpret the lease to mean that, where the dispute is over rent, the lessor may not pursue any remedy provided by the default provisions until the amount due has been determined by arbitration and, as specified in clause 4.9, has remained unpaid for five days.
Louisiana Revised Statute 9:4201 provides, in pertinent part:
“A provision in any written contract to settle by arbitration a controversy thereafter arising out of the contract... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.”
Franzone argues that arbitration was not required because there was no controversy or dispute as to the rental due and because the Bank had waived the arbitration provision by filing a motion for declaratory judgment.
Franzone’s denial of the existence of a controversy is clearly a denial of the very provision under which he declared put the lessee to be in default. The wording of 4.8 indicates that the parties anticipated differences between them as to the precise amount due, as it provides for an adjustment of any incorrect payment in the following month’s rent.
We find that the defendant did not waive arbitration. The Supreme Court recently held in: Matthews-McCracken Rutland Corp., Etc., 414 So.2d 756 (La.1982), at 757:
“Neither the mere answering of a judicial demand nor the mere delay in filing the demand for arbitration necessarily constitutes a waiver of the right to demand arbitration, especially in the absence of prejudice to the opposing party. M. Domke, The Law and Practice of Commercial Arbitration Section 19.01 (1968); see also Annot., 24 A.L.R.3d 1171 (1969), for a discussion of delay in asserting contractual right to arbitration as precluding enforcement of the right. Because of the strong policy favoring the right to demand arbitration, a party’s otherwise explainable conduct should be construed against waiver of the right.”
*1196 The court noted that waiver was found only in “extreme” cases and cited two, Sim v. Beauregard Electric Cooperative, Inc., 322 So.2d 410 (La.App. 3rd Cir.1975) and I.D.C., Inc. v. McCain-Winkler Partnership, 396 So.2d 590 (La.App. 3rd Cir.1981). Those cases are distinguishable from the one at hand, in that the parties had first sued for breach of contract and amended much later to demand arbitration.
We hold that the procedure for settling disputes as to rent by arbitration was agreed to by the parties, in a written contract of lease and is binding upon them.
Accordingly, the judgment appealed from is affirmed.
AFFIRMED.

. The same parties conducted prior litigation concerning the lease of another parcel of real estate. Merchants Trust and Savings Bank v. Franzone, 388 So.2d 851 (La.App. 4th Cir.1980) writs denied, 395 So.2d 333 (La.1980); Merchants Trust and Sav. Bank v. Franzone, 425 So.2d 844 (La.App. 5th Cir.1983) writs denied, 433 So.2d 160, 1983, reconsideration denied, 435 So.2d 435, 1983; Franzone v. Merchants Trust and Savings Bank, 427 So.2d 600 (La.App. 5th Cir.1983).