322 So.2d 410 (1975)
John A. SIM, Plaintiff-Appellant,
v.
BEAUREGARD ELECTRIC COOPERATIVE, INC., Defendant-Appellee.
No. 5079.
Court of Appeal of Louisiana, Third Circuit.
November 20, 1975.
*411 Russell T. Tritico, Lake Charles, for plaintiff-appellant.
Jones, Kimball, Patin, Harper, Tete & Wetherill, by J. Norwell Harper, Lake Charles, for defendant-appellee.
Before HOOD, CULPEPPER, and MILLER, JJ.
HOOD, Judge.
This is an action to recover damages for the alleged breach of a contract of employment entered into by the parties. It was instituted by John A. Sim against Beauregard Electric Cooperative, Inc. Sim died while the suit was pending, and the administrator of his succession was substituted as plaintiff. Judgment on the merits was rendered by the trial court in favor of defendant, rejecting plaintiff's demands, and plaintiff has appealed.
The issues presented are (1) whether plaintiff has waived his right to arbitration under the provisions of the above contract of employment; and (2) whether defendant was justified in terminating plaintiff's employment prior to the expiration of the term provided in that contract.
Sim and Beauregard Electric entered into a written contract of employment on March 6, 1965, under the terms of which Beauregard agreed to employ Sim, and the latter agreed to work for defendant, as *412 Manager of Beauregard Electric Cooperative, Inc., for a period beginning as of February 1, 1965, and extending through October 16, 1970. Beauregard was designated as "Employer" in that agreement, and Sim was designated as "Manager." The contract contained the following provision:
"In the event any dispute arises under the terms of this agreement, the same shall be settled by arbitration, and pursuant thereto Employer shall name one (1) person of good reputation in the community, and Manager shall likewise name one (1) person of the same reputation, and these two (2) arbitrators shall select a third, and the three (3) so named shall constitute a Board of Arbitration, and the decision of any two (2) arbitrators shall be binding to the parties of this agreement."
Sim actually began working for Beauregard Electric in 1950, and he became Manager in 1956. He continued to work as Manager of that establishment after the above contract was entered into, but his employment was governed by that contract from the effective date of that agreement, February 1, 1965, until April 13, 1966.
On the last mentioned date, April 13, 1966, the Board of Directors of Beauregard Electric adopted a resolution terminating the employment of Sim as manager of that cooperative. The resolution recites that his employment was being terminated and cancelled "because of the manager's excessive unauthorized absences from his employment for extended periods of time and his failure to perform the duties required of him thereby." Sim did not work for defendant at any time after that resolution was adopted.
This suit was filed by Sim on October 28, 1966, about six months after his employment was terminated. He alleges in his original and supplemental petitions that defendant's action in terminating his employment constituted a breach of the above contract, that defendant was in bad faith, and that plaintiff sustained damages as the result of that breach consisting of loss of salary, bonuses and out-of-pocket expenses, and of humiliation, loss of reputation and attorney's fees. He demands judgment against defendant for $212,998.00 as conpensation for those alleged damages.
Several motions and exceptions, a request for admission of facts and a number of procedural issues were presented to and resolved by the trial court. The many pleadings submitted by both parties included a motion for summary judgment filed by defendant on December 2, 1966. That motion was resisted by plaintiff, and after a hearing it was denied by the trial court. Another motion for summary judgment based on different grounds was filed by defendant on February 24, 1968, and it also was resisted by plaintiff. A hearing was held on that motion on March 25, 1968, and a summary judgment eventually was rendered on September 11, 1969, dismissing plaintiff's suit at his costs. On appeal, we reversed that judgment and remanded the case to the trial court. See Sim v. Beauregard Electric Cooperative, Inc., 241 So.2d 26 (La.App. 3 Cir. 1970).
On July 28, 1969, which was after a hearing had been held on defendant's second motion for a summary judgment but before such a judgment was rendered, plaintiff filed a supplemental petition demanding for the first time that defendant be ordered to arbitrate the differences which existed between them, and specifically to arbitrate the issue of whether defendant had the right to discharge plaintiff from his employment. Plaintiff's first demand for arbitration thus was made 33 months after he instituted this suit for damages. Since the demand for arbitration was not made until after a hearing had been held on the last motion for summary judgment, no issue was raised at that hearing as to plaintiff's right to arbitrate, *413 and no such issue was presented when the case was before us the first time on appeal.
After the case was remanded to the trial court, defendant filed an answer asserting that any right which plaintiff may have had to arbitration under the contract was waived and abandoned by plaintiff upon his filing this suit for damages for an alleged breach of contract. In answer to plaintiff's demand for judgment for damages, defendant alleged at least 14 incidents which it contends constituted breach of contract by plaintiff justifying the termination of plaintiff's employment. Defendant also filed a reconventional demand, seeking judgment against plaintiff for amounts alleged to have been received by him on unauthorized and unnecessary travel and related expenses.
Several interlocutory matters were resolved by the trial judge, and eventually the case came up for trial on its merits on February 16, 1972. The trial was concluded on March 16, 1972.
At the first day of the trial plaintiff filed a motion to stay proceedings, alleging that the matter before the court involved issues referable to arbitration under an agreement in writing for arbitration and that no useful purpose would be served by hearing testimony. The trial judge denied that motion, and the trial of the case proceeded without interruption.
Plaintiff maintained at the trial that the only question presented was whether the contract required arbitration of the dispute, and he objected generally to all evidence offered by defendant which was not relevant to that issue. The trial judge overruled plaintiff's objection, and admitted the evidence subject to that objection.
Following the trial of the case, the trial judge concluded that plaintiff had waived his right to demand arbitration by instituting this suit for damages, and that plaintiff himself had breached the contract of employment in several respects barring him from recovery in this case. Judgment accordingly was rendered in favor of defendant, rejecting plaintiff's demands. The present appeal was taken from that judgment.
The trial court did not specifically render judgment on defendant's reconventional demand, but that demand is not before us, since defendant did not appeal or answer the appeal taken by plaintiff.
On this appeal, plaintiff contends primarily that the judgment of the trial court should be reversed, and that the case should be remanded to the trial court with instructions that defendant be ordered to arbitrate the dispute under LSA-R.S. 9:4201-4217. Alternatively, it argues that he is entitled to recover damages for defendant's alleged breach of contract. Defendant argues that plaintiff has waived his right to demand arbitration, and that defendant was wraranted in terminating plaintiff's employment because of the latter's breach of contract.
As already noted, the contract of employment entered into between the parties provides that disputes arising under the terms of the contract shall be settled by arbitration. Section 4201 of the Louisiana Arbitration Law (LSA-R.S. 9:4201-4217) stipulates that a provision in a written contract to settle by arbitration a controversy arising out of that contract is irrevocable and is enforceable, save on such grounds as exist at law or in equity for the revocation of any contract. LSA-R.S. 9:4202 provides:
"If any suit or proceedings be brought under any issue referable to arbitration under an agreement in writing for arbitration, the court in which the suit is pending, upon being satisfied that the issue involved in the suit or proceedings is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until an arbitration has been had in accordance with the terms of the agreement, *414 providing the applicant for the stay is not in default in proceeding with the arbitration."
In view of the stipulations in the contract entered into by the parties to the instant suit and the provisions of LSA-R.S. 9:4201 and 4202, we think plaintiff would be entitled to judgment ordering arbitration and to have the proceedings stayed until an arbitration is had, unless the evidence shows that he has waived his right to arbitration.
Our review of the record and of the facts convinces us that plaintiff has waived his right to arbitration of the issues which are presented in this suit.
In Lawton v. Cain, 172 So.2d 734 (La. App. 2 Cir. 1964), a building contractor, who claimed a balance was due on a contract providing for arbitration of disputes as a condition precedent to filing suit, was held to have waived arbitration by instituting suit for the balance alleged to be due on the contract. The court said:
"In view of the above chronological events, it is evident plaintiff filed suit against defendant for the alleged balance due on a building contract when he had been repeatedly put on notice that defendant was emphatically contending the workmanship was faulty. Therefore, under the provisions of the contract agreement and specifications it was the duty of plaintiff to submit such disputes and claims to arbitration prior to instituting legal proceedings. However, he did not choose to so do, but rather elected to litigate his claim in the forum of our courts, thereby waiving and abandoning the right to demand arbitration."
A rehearing was granted in Lawton to reconsider the court's holding that plaintiff had waived its right to arbitration. The court, however, reinstated its original judgment, using the following more explicit language:
"The position of the parties and their contentions must be borne in mind. The contract between plaintiff contractor and defendant owner provided for arbitration of specified differences and disputes with respect to the performance and execution of the contract. In this action plaintiff seeks recovery of the unpaid balance of the contract price. It is the viewpoint of this court that by this resort to litigation the plaintiff himself, `waived,' that is, abandoned, disregarded, relinquished, surrendered, renounced, dispensed with, and superseded the procedure by arbitration as provided by the contract." (172 So.2d 734, 738).
The facts and issues in Lee v. Blackwell, 286 So.2d 185 (La.App. 4 Cir. 1973), are similar to those which are presented here. In that case plaintiff sued his employer to recover loss of wages and damages resulting from an alleged breach of a contract of employment which contained an arbitration clause. The defendant did not object to submitting the case to the court without resort to arbitration, and the court held that both parties had waived their right to arbitration. The court said:
"As a preliminary matter, our attention is directed to Article 8 of the contract, which provides that the parties will submit to arbitration every claim or dispute arising out of the contract. Plaintiff did not seek arbitration in this matter, nor has defendant interposed any exception or objection to the submission of this case to the court without prior resort to arbitration. Under these circumstances, it is clear that both parties have waived their contractual right to arbitration, and that this matter is properly before the court. Quinn Construction Co. v. Savoie, 207 So.2d 229 (La. App. 4th Cir. 1968); Lawton v. Cain, 172 So.2d 734 (La.App. 2nd Cir. 1964)."
We agree with the conclusions reached by the courts in the above cases. The right to arbitrate given by a contract may be waived, we think, even though LSA-R.S. 9:4201 provides than an arbitration *415 clause is irrevocable. The waiver may be either by express words or by necessary implication. The institution of a suit by one party seeking damages for the alleged breach of such a contract is incompatible with a later demand by the same party that the dispute be settled by arbitration. We believe that the filing of such a suit by a party to the contract, without relying on the arbitration provision in that agreement, constitutes a waiver of that party's right to demand arbitration of the dispute. Lawton v. Cain, supra; 17A C.J.S. Contracts § 515(11), page 889; 5 Am.Jur.2d, Arbitration and Award, § 51, page 556; Quinn Construction Co. v. Savoie, 207 So.2d 229 (La.App. 4 Cir. 1968); Francis I. duPont and Company v. McMikle, 230 So.2d 677 (La.App. 2 Cir. 1970).
The institution of the instant suit by Sim seeking damages for an alleged breach of contract is incompatible with his subsequent demand, asserted for the first time 33 months later, that his claim for damages now be settled by arbitration. It is inconsistent with his "Motion to Stay Proceedings," filed under LSA-R.S. 9:4202 more than five years after the suit was instituted originally. Plaintiff cannot consistently seek judicial relief and at the same time demand that the matter be taken out of the hands of the court and settled by arbitration. He must elect which remedy he will pursue. We find no error in the trial judge's holding that the institution of this suit by plaintiff constituted a waiver by him of his right to demand arbitration of the dispute which is the subject of this suit.
Plaintiff contends, however, that under the provisions of LSA-C.C.P. art. 1153 the filing of his amended petition on July 28, 1969, demanding arbitration for the first time, "relates back" to the date of the filing of his original petition on October 28, 1966. He argues that the case must be viewed, therefore, "as though arbitration was the initial demand along with the alternative demand for damages." To support that position, he cites several cases in which the filing of an amended petition or another suit after the prescriptive period had run was allowed to "relate back" to the time the suit was originally filed, with the result that the running of prescription was prevented. See Kreher v. T. L. James & Company, Inc., 274 So.2d 734 (La.App. 4 Cir. 1973); Mid-States Ins. Co. v. Fireman's Fund Ins. Co., 240 So.2d 908 (La. App. 4 Cir. 1970); and Vastola v. Insurance Company of North America, 204 So. 2d 605 (La.App. 4 Cir. 1967).
We have not considered the question of whether LSA-C.C.P. art. 1153 should be applied in a case such as this, which does not involve the running of prescription and where plaintiff waived the relief sought in the amended pleading before that pleading was ever filed, because we have concluded that the result would be the same in the instant suit whether that article is or is not applied.
Assuming for the purposes of this suit that the filing of plaintiff's amended petition in 1969 "relates back" to the date on which the suit was originally instituted, it does not logically follow, as argued by plaintiff, that the demand for arbitration must be regarded as the "initial demand," and the prayer for damages as an "alternative demand. "Our view, instead, is that under such an assumption the petition would merely contain two incompatible demands, one for judicial relief and the other for arbitration.
During the period of more than five years which elapsed from the time the suit was filed initially in 1966, until the Motion to Stay Proceedings under LSA-R.S. 9:4202 was filed in 1972, plaintiff sought only to obtain a judgment awarding him damages for breach of contract. He made no effort during all of that time to refer the matter to arbitration or to have the proceedings stayed so that the dispute *416 could be arbitrated. If we view the case, therefore, as one in which two inconsistent demands were made initially, the fact that plaintiff vigorously pursued only one of those remedies for more than five years warrants the conclusion that he has waived his right to pursue the other remedy.
We agree with the trial judge that plaintiff has waived his right to demand arbitration under the contract and under LSA-R.S. 9:4201-4217.
We turn now to the question of whether Sim violated provisions of the above contract prior to the time he was discharged, and thus whether defendant was warranted in terminating his employment before the expiration of the term provided in that agreement.
Defendant alleges that Sim violated the provisions of the contract of employment in several respects. It alleges, as one breach of contract, that Sim misappropriated $4,850.00 from a savings fund which was being maintained by defendant, and that he used the amount misappropriated to pay his personal gambling losses.
The evidence shows that in March and the early part of April, 1966, Sim engaged in poker games with Jeff Ware, and that he became indebted to Ware for $4,850.00 as gambling losses. To pay that indebtedness Sim made out a check for $4,850.00, payable to the order of Ware, drawn on the account of "Thrifty Savings of Beauregard Electric Cooperative, Inc.," and Sim signed that check as "Manager" of that savings fund. The check was delivered to Ware, and he presented it for payment to the drawee bank, in DeRidder, but the bank refused to pay it because it was made payable to someone other than an employee of the cooperative. Ware returned the check to Sim, and the latter thereupon issued another check for $4,850.00, dated April 11, 1966, drawn on the same savings account, and signed by Sim as "Manager" of that fund. This last mentioned check was made payable to the order of "John A. Sim," and it was endorsed in blank by the payee. It was delivered to Ware, who cashed the check and kept the proceeds as payment of the gambling debt which Sim owed to him.
The fund known as "The Thrifty Savings, Beauregard Electric Cooperative, Inc.," was inaugurated by defendant in 1955. Defendant's employees had the right to have parts of their salaries withheld and paid into the fund, and the amount so withheld was matched by the employer. Employees were permitted to borrow 75% of the amount which they had deposited into the fund, subject to the approval of the Manager of the cooperative, who administered and controlled that account. An employee was required to sign a promissory note made from that fund.
When Sim's employment was terminated, the Board of Directors of Beauregard Electric directed that the above savings account be audited immediately, and it engaged John T. Wooten, a CPA, to perform that service. The audit made by Wooten revealed that the check for $4,850.00 issued on April 11, 1966, and some other checks issued by Sim and drawn on that account, were not numbered, that they were not entered on the books of the Thrifty Savings fund, and that no promissory note was executed by Sim or anyone else evidencing an indebtedness to repay the amounts so withdrawn.
The audit also showed that Sim had withdrawn $24,042.58 from the Thrifty Savings fund for his own personal use, that being $7,992.24 more than the total amount which he had deposited into that account and substantially more than he was authorized to borrow from it. Of the total amount withdrawn from the fund and paid to plaintiff, $5,250.00 was paid to him on checks signed by plaintiff, made payable to "Cash" or to the order of Sim, and they were not entered on the books of the fund and were not represented by promissory notes. The last mentioned figure includes *417 the withdrawal of $4,850.00 to pay a gambling debt of plaintiff.
After the above audit was completed, defendant made demand on Sim for repayment of the $7,992.24 which had been withdrawn from the Thrifty Savings fund, and in response to that demand Sim repaid $7,992.24 to the savings fund on May 5, 1966.
Defendant also alleges, as another violation of the contract of employment, that Sim withdrew $750.00 from defendant's general fund on the representation that that amount was to be used to finance a business trip to Washington, D. C., for the cooperative, but that no such trip was ever made.
The evidence shows that Sim withdrew $750.00 from the general fund of the cooperative on October 7, 1966, "for expenses to be incurred attending Coop business in Washington, D. C." He concedes that he deposited that amount to his personal account, that he did not make a trip to Washington, and that instead he went to Biloxi, Mississippi, where the cooperative had no business to conduct. While in Biloxi, he stayed at the Edgewater Beach Hotel from October 7 to October 10, and he incurred bills amounting to $609.25 at that hotel. He admits that he was accompanied on that trip by a female companion, not his wife, and the record shows that the hotel bill included substantial charges for men's and women's clothing and beverages. The hotel bill was charged to Beauregard Electric on an American Express credit card, and on November 29, 1965, Sim signed a check drawn on the general account of defendant and made payable to American Express in payment of that bill.
We find that Sim misappropriated at least $1,359.25 from funds belonging to defendant on the representation that those funds were needed for a business trip to Washington, whereas no such trip was made and the funds were either retained by plaintiff or were used by him for a pleasure trip.
Defendant alleges that Sim violated the contract further by misappropriating $794.88 from defendant's Employees' Welfare Fund.
The "Beauregard Electric Cooperative Employees' Welfare Fund" was established by defendant to provide entertainment, recreation, flowers at funerals, and other similar benefits for its employees. Payments into that account were made from the general funds of the cooperative, and the Welfare Fund was administered solely by Sim, as Manager of the cooperative. The money belonging to that fund was kept by plaintiff in a drawer of his desk. After Sim was discharged, the bookkeeper and the assistant manager of the cooperative determined that there was a shortage of $794.88 in that fund. Sim paid the amount of that shortage to Beauregard Electric on July 15, 1966, about three months after his employment was terminated.
Each of the above incidents constituted a breach of the fiduciary relationship which existed between Sim and the defendant, and each such incident thus constituted a breach of the contract of employment which had been entered into between the parties. We believe that because of these prior breaches of contract by Sim, Beauregard Electric was warranted in terminating his employment on April 13, 1966. In view of that conclusion, it is unnecessary for us to consider the other grounds alleged by defendant as justification for its action in discharging plaintiff.
We find no error in the judgment of the trial court rejecting plaintiff's demands.
For the reasons assigned, the judgment appealed from is affirmed. The costs of this appeal are assessed to plaintiff-appellant.
Affirmed.