758 So.2d 222 (2000)
ALBERT K. NEWLIN, INC.
v.
Millard E. MORRIS, et al.
No. 99-1093.
Court of Appeal of Louisiana, Third Circuit.
January 5, 2000.
*224 R. William Collings, Collings & Collings, Lake Charles, Counsel for Plaintiff/Appellee.
Frank C. Miller, III, Lake Charles, Counsel for Defendant/Appellant.
Court composed of Chief Judge NED E. DOUCET, Jr., Judge MARC T. AMY, Judge GLENN B. GREMILLION.
AMY, Judge.
This action arises out of a dispute between a subcontractor and a general contractor regarding an amount allegedly owed to the subcontractor for work performed in the construction of a personal residence. The general contractor asserted that the court proceedings should be stayed and the parties should be ordered to arbitrate the dispute in accordance with their contract. The trial court denied the motion to stay and determined that the general contractor had waived its right to arbitration. This action proceeded to trial and the trial court rendered judgment in favor of the subcontractor. We affirm in part and reverse in part.

Factual and Procedural Background
On June 3, 1994, Millard E. Morris, the prospective homeowner, entered into a contract with Ribbeck Construction Corporation (Ribbeck), as general contractor, for the construction of a home in DeRidder, Louisiana. The price agreed upon for construction of the residence was $1,433,550.00. Ribbeck then subcontracted with Albert K. Newlin, Inc. (Newlin), on June 31, 1994, to perform the plumbing and electrical portion of the contract for the total sum of $175,066.00.
After a substantial amount of work had been completed, a dispute arose between Morris and Ribbeck regarding the construction of the residence, which eventually led to the termination of Ribbeck as general contractor. Ribbeck instituted arbitration proceedings against the owner for wrongful termination and for payment of work performed. The arbitration panel determined that Ribbeck's termination was without cause and issued an award to Ribbeck. The arbitration panel found that the final contract price, after adjustment for extra and deleted work, totaled $1,271,071.00. The contract price was credited with payments already made to Ribbeck in the amount of $967,000.00. The panel also determined that $182,629.00 worth of work remained to complete the home. After adding $13,076.00 in delay damages, Ribbeck's total award was $134,482.00.
On August 7, 1997, Newlin filed suit to enforce a materialmen's lien against Morris, Ribbeck, and United States Fidelity & Guaranty Company in the sum of $69,069.73, for material and labor allegedly provided by Newlin under the subcontract with Ribbeck.[1] Thereafter, Ribbeck filed *225 a reconventional demand against Newlin alleging that Newlin owed it a proportionate share of attorney's fees and arbitration cost, which Ribbeck had incurred during its arbitration with Morris.
The matter was set for trial on March 24, 1998. However, after several continuances, this matter was eventually heard on March 17, 1999. Prior to trial, on March 12, 1999, Ribbeck filed a motion to stay the proceedings alleging that Newlin was bound by the subcontract with Ribbeck to submit any dispute arising out of its subcontract to arbitration. The trial court considered Ribbeck's motion to stay on the day of trial. The trial court determined that Ribbeck waived its right to have the case arbitrated by failing to timely raise the question and since Ribbeck, in filing a motion for continuance on January 19, 1999, specifically requested that the case be re-fixed for trial on the next available date. After dismissing Ribbeck's motion to stay, the trial court proceeded to hear the merits of the action.
After considering all of the evidence adduced at trial, the trial court concluded that Newlin was entitled to $36,534.42. The sum represented the contract price, including written authorized change orders to the subcontract and the undisputed unwritten change orders, less credit for payment Newlin had received, and the cost of work to be completed. Further, the trial court dismissed Ribbeck's claim for attorney's fees, which had been raised by Ribbeck in its reconventional demand. Ribbeck appeals the trial court's decision asserting several assignments of error.

Discussion of the Merits
Ribbeck, in its first several assignments of error, advances various reasons why the trial court erred in denying its motion to stay the proceedings and ordering arbitration. Principally, Ribbeck contends that the subcontract signed by Newlin contains a provision which binds the parties to settle all claims and disputes between the subcontractor and the general contractor arising out of or related to the subcontract, through arbitration. Though the trial court ultimately determined that Ribbeck had the right to have its dispute with Newlin arbitrated, it determined that Ribbeck waived that right by not timely raising the issue and by specifically requesting a trial date.

Subject Matter Jurisdiction
We first address Ribbeck's assertion that the trial court lacked subject matter jurisdiction to decide the issue of waiver. Ribbeck argues that once confronted with a request for arbitration, the only issues a court may consider are whether a valid agreement to arbitrate exists and whether a party has refused or failed to comply with a request to arbitrate. In support of this contention, Ribbeck cites: Standard Company of New Orleans, Inc. v. Elliott Construction Co., Inc., 363 So.2d 671 (La.1978); Bartley, Inc. v. Jefferson Parish School Board, 302 So.2d 280 (La.1974); Willis-Knighton Medical Center v. Southern Builders Inc., 392 So.2d 505 (La.App. 2 Cir.1980). We find this line of jurisprudence distinguishable from the instant matter however, and conclude that it does not prohibit an exercise of subject matter jurisdiction by the trial court under the present circumstances.
The cases cited by Ribbeck are instances in which a party aggrieved by the failure or refusal of another to perform under a written agreement to arbitrate, petitions the court, in accordance with La.R.S. 9:4203, for an order directing arbitration to proceed.[2] In those instances, the courts *226 have held that the only triable issues before the court are whether a valid agreement to arbitrate exists and whether a party has refused or failed to comply with a request to arbitrate. See Bartley, Inc., 302 So.2d 280; Elliott, 363 So.2d 671. Thereafter, if the court makes such a determination, then interpretation of and compliance with the procedures of the contract and the question of contractual waiver are issues of procedural arbitrability that should be decided by an arbitrator rather than the courts. Id. See also Conagra Poultry Co. v. Collingsworth, 30,155 (La.App. 2 Cir. 1/21/98); 705 So.2d 1280.
However, the instant matter is not one in which a party has filed suit seeking enforcement of an arbitration agreement pursuant to La.R.S. 9:4203. Rather, Ribbeck filed an action to enforce a materialmen's lien and only after the matter was ready for trial did it file a motion to stay seeking performance of the arbitration agreement. In I.D.C., Inc. v. McCain-Winkler Partnership, 396 So.2d 590 (La. App. 3 Cir.1981), a panel of this court concluded that the limited subject matter jurisdiction, explained by the supreme court in Bartley and Elliott is inapplicable to a situation wherein a party seeks enforcement of an arbitration agreement while participating in an ongoing judicial proceeding. The court determined that in those instances, the determination of whether or not a party has waived its contractual right to arbitrate by its participation in the judicial process or by failing to timely request arbitration while participating in the judicial process is an issue properly considered by the trial court. I.D.C., Inc., 396 So.2d 590. See also Sim v. Beauregard Elec. Co-op., Inc., 322 So.2d 410 (La.App. 3 Cir.1975).
In Matthews-McCracken Rutland Corp., v. City of Plaquemine, 414 So.2d 756 (La.1982), the Louisiana Supreme Court discussed I.D.C., Inc. and Sim in its consideration of whether an arbitration agreement existing in that case had been waived. Although ultimately concluding that no waiver existed, the supreme court considered the waiver issue. See also Moore v. Automotive Protection Corp., 97-0623 (La.App. 4 Cir. 5/21/97); 695 So.2d 550; B & S Equip. Co., Inc. v. Carl E. Woodard, Inc., 620 So.2d 347 (La.App. 5 Cir.), writ denied 629 So.2d 394 (La.1993). Therefore, we conclude that in a situation such as the one before us, i.e., those in which the question of enforcement of an arbitration agreement is introduced into a preexisting matter, the trial court has subject matter jurisdiction to consider the waiver or lack thereof. We find no error in the trial court's consideration of the merits and turn to review of its ultimate determinations in this regard.

Waiver of the Right to Arbitrate
The sections of the Louisiana Arbitration Law pertinent to the instant matter are set forth in La.R.S. 9:4201 and 4202.
La.R.S. 9:4201 reads:
A provision in any written contract to settle by arbitration a controversy thereafter arising out of the contract, or out of the refusal to perform the whole or any part thereof, or an agreement in writing between two or more persons to submit to arbitration any controversy existing between them at the time of the agreement to submit, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.
La.R.S. 9:4202 states that:

*227 If any suit or proceedings be brought upon any issue referable to arbitration under an agreement in writing for arbitration, the court in which suit is pending, upon being satisfied that the issue involved in the suit or proceedings is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until an arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with the arbitration.
The subcontract entered into by Newlin and Ribbeck contains an applicable arbitration provision which states in pertinent part:
6.6 All Claims, disputes and other matters in question between the Subcontractor and the Contractor arising out of or related to the Subcontract or the breach thereof, except as specifically governed by the foregoing provisions, and except for claims which have been waived by the making and acceptance of final payment, shall be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association then obtaining at the sole option of the Contractor.
The failure of a party to arbitrate in accordance with the terms of an agreement may be raised either through a dilatory exception of prematurity demanding dismissal of suit or by motion to stay proceedings pending arbitration. Gary v. Moncla Well Servs., Inc., 97-1131 (La.App. 3 Cir. 2/4/98); 706 So.2d 1096. In the instant matter, we find that Ribbeck properly asserted its right to arbitrate in a motion to stay the proceedings, and that Ribbeck would be entitled to assert its claim in arbitration in accordance with the terms of the subcontract, unless it has waived that right.
In Sim, 322 So.2d at 414-15, a panel of this court explained:
The right to arbitrate given by a contract may be waived, we think, even though LSA-R.S. 9:4201 provides than [sic] an arbitration clause is irrevocable. The waiver may be either by express words or by necessary implication. The institution of a suit by one party seeking damages for the alleged breach of such a contract is incompatible with a later demand by the same party that the dispute be settled by arbitration. We believe that the filing of such a suit by a party to the contract, without relying on the arbitration provision in that agreement, constitutes a waiver of that party's right to demand arbitration of the dispute. Lawton v. Cain [172 So.2d 734 (La.App. 2 Cir. 1964)], supra; 17A C.J.S. Contracts § 515(11), page 889; 5 Am.Jur.2d, Arbitration and Award, § 51, page 556; Quinn Construction Co. v. Savoie, 207 So.2d 229 (La.App. 4 Cir.1968); Francis I. duPont and Company v. McMikle, 230 So.2d 677 (La.App. 2 Cir.1970).
See I.D.C., Inc., 396 So.2d 590 (wherein a panel of this court determined that the holding in Sim was applicable to their determination of whether a defendant had waived arbitration by filing a reconventional demand).
The Louisiana Supreme Court, addressing the waiver of arbitration in Matthews-McCracken, 414 So.2d at 757, held that:
Neither the mere answering of a judicial demand nor the mere delay in filing the demand for arbitration necessarily constitutes a waiver of the right to demand arbitration, especially in the absence of prejudice to the opposing party. M. Domke, The Law and Practice of Commercial Arbitration § 19.01 (1968); see also Annot., 24 A.L.R.3d 1171 (1969), for a discussion of delay in asserting contractual right to arbitration as precluding enforcement of the right. Because of the strong policy favoring the right to demand arbitration, a party's otherwise explainable conduct should be construed against waiver of the right.

*228 Only in extreme cases have courts found waiver of the right to demand arbitration.
The supreme court continued with its analysis by citing both the I.D.C., Inc., and Sim cases as examples of extreme cases.
After review of the instant matter, we find guidance in comparing the present case to I.D.C., Inc. In that case, the defendant waited seventeen months after suit was filed before motioning the court to stay the proceedings. I.D.C., Inc., 396 So.2d 590. During the course of the proceedings, the defendant did not raise the issue of arbitration in an exception or in his answer to the petition. Defendant requested that the matter be set for trial and subsequently attended two pre-trial conferences at which the issue of arbitration was not raised. Lastly, the defendant sought relief from the court in the form of a reconventional demand against the plaintiff and, again, did not raise the arbitration issue. The court held that based on the defendant's conduct, including late filing of the motion to stay, the defendant had waived their right to arbitrate. Id.
In the instant matter, Ribbeck's conduct seems very similar to that under consideration in I.D.C., Inc. The present action was originally filed on August 7, 1997, and set for trial on March 24, 1998. Ribbeck did not raise the issue of arbitration via an exception of prematurity nor was it alleged in the answer as an affirmative defense. This matter was continued three times at the request of Ribbeck and once by a joint motion with Newlin. In the last motion to continue, Ribbeck specifically asked that the court fix the matter for trial. In September of 1998, Ribbeck amended its answer and asserted a reconventional demand against Newlin for attorney's fees arising out of its arbitration with Morris, and again did not raise the issue of arbitrating the subcontractor's claim. Ribbeck did not assert its right to arbitration until approximately nineteen months after this suit was filed. Additionally, the motion to stay was filed five days prior to the trial date. Thus, we conclude that Ribbeck's conduct in this matter evidences its intent to litigate. Further militating against arbitration, is the prejudice Newlin experienced in preparing to litigate this matter and preparing a defense to Ribbeck's reconventional demand, before being made aware of Ribbeck's claim to arbitrate this dispute.
Therefore, we find no clear error in the trial court's determination that Ribbeck's conduct acted as a waiver of its contractual right to demand arbitration. Accordingly, we find these assignments of error without merit.

Interpretation of Subcontract
Alternatively, Ribbeck argues that due to the applicable provisions in the subcontract, Newlin is bound by the arbitration panel's findings as they relate to the subcontract with Newlin. Moreover, Ribbeck contends that any amount owed to Newlin should be offset by the amount of attorney's fees and costs it incurred during the arbitration proceedings for defending claims which arose out of the subcontract with Newlin. The trial court determined that the provisions of the subcontract relied on by Ribbeck were ambiguous when read as a whole and found that Newlin was neither bound by the previous arbitration proceedings nor was Ribbeck entitled to indemnification for attorney's fees incurred from the arbitration.
A contract has the effect of laws between the parties. La.Civ.Code art. 1983. Courts are bound to enforce the contract as written. Bond v. Allemand, 632 So.2d 326 (La.App. 1 Cir.1993), writ denied, 94-718 (La.4/29/94), 637 So.2d 468. If the words of a contract are clear, explicit, and lead to no absurd results, it must be interpreted by reference to the "four corners" of the document and no further interpretation can occur in search of the parties' intent. La.Civ.Code art.2046; Woolf & Magee v. Hughes, 95-863 (La.App. 3 Cir. 12/6/95), 666 So.2d 1128, writ denied, 96-73 *229 (La.3/15/96), 669 So.2d 427. Whether the words of a contract are "clear and explicit" or ambiguous is a question of law. Terrebonne Fuel & Lube, Inc. v. Placid Refining Co., 93-2364 (La.App. 4 Cir. 10/2/96), 681 So.2d 1292, writ denied, 96-2625 (La.12/13/96), 692 So.2d 1066. Therefore, the appellate review of such a legal question is constrained to a determination of whether the trial court's interpretation is legally correct or incorrect. Weeks v. T.L. James & Co., Inc., 626 So.2d 420 (La.App. 3 Cir. 1993), writ denied, 93-2909 (La.1/28/94), 630 So.2d 794.
Hebert v. Insurance Center, Inc., 97-298, p. 5 (La.App. 3 Cir. 1/7/98); 706 So.2d 1007, 1011, writ denied, 98-353 (La.3/27/98); 716 So.2d 888.
Ribbeck cites the following provisions of the subcontract to support his contention that Newlin is bound by the arbitration proceedings:
Dispute Resolution Process.
6.1.1 Any controversy or claim between the Contractor and the Subcontractor arising out of or related to this Subcontract, or the breach thereof, shall be settled according to the disputes resolutions procedures in the Prime Contract.
6.1.2 The Subcontractor shall be bound by the disputed resolution procedures set forth in the Prime Contract.
6.1.3 The Subcontractor shall furnish all notices and information within the time required under the Prime Contract to enable the Contractor to timely assert a claim or a defense of the Subcontractor.
6.1.4 For a dispute which involves the Subcontractor's work, in whole or in part, the Subcontractor shall have the right to participate in the assertion or defense of claims related to such work in the disputes resolution procedures and shall be bound by the outcome.
Upon review of section 6 of the subcontract, we conclude that the trial court was correct in finding that the subcontract does not legally bind Newlin to the arbitration proceedings. A plain reading of provisions 6.1.1-6.1.3 seems to indicate they were meant to address the method of resolving disputes between the subcontractor and the general contractor. In the event of such a dispute, the parties are bound by the dispute resolution procedures set forth in the prime contract. After an examination of the prime contract, we are unable to find any dispute resolution procedure stated therein as referenced by these provisions. Provision 6.1.6 states that: "If the Prime Contract does not provide a disputes resolution procedure... then such controversy, dispute, or claim between the Contractor and Subcontractor shall be determined as hereinafter provided in paragraph 6.6." Provision 6.6 merely requires arbitration of disputes. Thus, provisions 6.1.1-6.1.3 are relatively inapplicable to the present argument and, accordingly, do not support the contention that Newlin is bound by an arbitration entered into by Ribbeck and Morris, as Ribbeck presently argues.
Furthermore, though provision 6.1.4 addresses disputes which involve the subcontractor's work, due to the clear language of the provision, as applied to the facts before us, we do not find that 6.1.4 legally binds Newlin to the arbitration between the general contractor and the homeowner. Section 6.1.4 states that the "Subcontractor shall have a right to participate in the assertion or defense of claims or a defense of claims related to such work in the disputes resolution procedures and shall be bound by the outcome." (Emphasis added). Thus, this section contemplates the subcontractor joining in the dispute resolution process before it would be bound by the outcome. In the instant matter, Newlin chose not to assert its right to arbitrate the dispute with Morris after being notified of the arbitration proceedings by Ribbeck. Therefore, based on these circumstances, we do not conclude that the trial court erroneously determined that the provisions *230 of the subcontract do not bind Newlin to the arbitration panel's decision.

Attorney's Fees
Next, Ribbeck contends that the trial court should have enforced the subcontract's indemnification provision. The applicable provision cited by Ribbeck is found in provision 6.5 of the subcontract, which reads:
The Subcontractor hereby agrees to indemnify the Contractor for any and all costs, including attorney's fees, of defending a claim by the Owner or any other party in the disputes resolution procedure if such claim relates to or arises from the Subcontractor's work.
After a review of the language of the provisions, we find that the indemnification provision is not ambiguous and entitles Ribbeck to recover those fees and costs incurred in disputing the claims by Morris as they related to the work performed by Newlin. See Maloney v. Oak Builders Inc., 256 La. 85, 235 So.2d 386 (1970); Eastover Corp. v. Martin Builders, 543 So.2d 1358 (La.App. 4 Cir.1989) (on limited rehearing).
In the instant matter, the arbitration proceeding entered into by Morris and Ribbeck did, in part, relate to the subcontractor's work. In rebutting Morris' breach of contract claim, Ribbeck offered evidence in support of the work performed by the subcontractors. Within this evidence was proof of work related to and arising out of the subcontract with Newlin specifically. Further, Ribbeck and Morris arbitrated several oral and written work order changes which were allegedly carried out by Newlin. The arbitration decision reveals that certain consideration was in fact given to the electrical and plumbing work performed by Newlin as well as the amount of work which remained to be completed under the subcontract. Accordingly, as we find the indemnification clause enforceable and a reconventional demand was filed asserting such claim, we conclude that at least the portion of the arbitration costs associated with Newlin's work may be recoverable, as provided for in provision 6.5 of the subcontract. Therefore, we remand this matter, insofar as it relates to the arbitration costs, for a determination by the trial court as to the percentage of arbitration costs which may be attributable to Newlin.[3]

Trial Court's Factual Findings
Finally, Ribbeck asserts that the trial court's factual findings are erroneous in calculating the amount owed under the subcontract. Ribbeck argues that the trial court should have based its award on the findings of the arbitration panel. We note, that in review of a matter on appeal, the court of appeal may not set aside a trial court's finding of fact in the absence of manifest error or unless it is clearly wrong. Stobart v. State through Dep't of Transp. and Dev., 617 So.2d 880 (La.1993). In making its findings, the trial court was presented with sworn invoices from Newlin evidencing its expenses for materials provided and work performed, as well as figures for work to be completed and payments received. These figures were introduced and supported by the testimony of Newlin's corporate accountant and secretary, Albert Newlin. Ribbeck, in rebuttal to Newlin's calculated cost of damages, relied on the findings and calculations set forth in the arbitration panel's decision.
The trial court concluded that the total subcontract price was $192,869.72. This amount includes an additional amount of $13,901.00 for written authorized change orders submitted by Newlin to Ribbeck. The trial court credited the payment received by Newlin in the amount of $155,433.35 against the total subcontract price, *231 leaving a total of $37,436.37. The trial court then reduced this amount by $7,266.00, after determining from the invoices and testimony presented by Ribbeck, that this was the cost to complete the work contracted. Therefore, a total of $30,170.37 remained. To this amount, the trial court added the sum of $6,364.05, which represented the undisputed oral change orders found to have been performed by Newlin and which had been awarded to Ribbeck in the arbitration decision. The trial court concluded the total sum owed to Newlin should be $36,534.42.
Upon review of the record, we do not find the trial court's factual findings clearly wrong. The determinations made by the court are supported by the evidence and testimony presented in this matter. Therefore, we find Ribbeck's assignment of error without merit.

DECREE
For the foregoing reasons, the decision of the trial court is affirmed in part and reversed in part. The trial court's decision is affirmed, except for the portion of the trial court's decision dismissing Ribbeck's claim for arbitration costs, which is reversed. Further, we remand this matter to the trial court for additional proceedings to determine the percentage of arbitration costs owed by Newlin. All costs associated with this appeal are assessed equally between the parties, Ribbeck Construction, Inc. and Albert K. Newlin, Inc.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
DOUCET, C.J., CONCURS IN THE RESULT.
NOTES
[1] Subsequent to filing this action, both United States Fidelity & Guaranty Company and Morris where dismissed as defendants. Newlin determined later that no bond was filed by USF & G and dismissed them from the suit. After learning that Ribbeck Construction Corporation, as general contractor, had posted a release of lien bond with the Recorder of Mortgages in Beauregard Parish, Newlin dismissed Morris in a joint motion to dismiss and reserved all rights to proceed against Ribbeck and the surety of the lien bond.
[2] La.R.S. 9:4203 provides, in part:

The party aggrieved by the alleged failure or refusal of another to perform under a written agreement for arbitration, may petition any court of record having jurisdiction of the parties, or of the property, for an order directing that the arbitration proceed in the manner provided for in the agreement....
The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not an issue, the court shall issue an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. If the making of the arbitration agreement or the failure or refusal to perform is an issue, the court shall proceed summarily to the trial thereof.
[3] From the evidence presented at trial, it appears Ribbeck has filed suit against the attorneys who represented it during the arbitration proceedings with Morris, seeking a determination as to the reasonableness of the attorney's fees charged. At the time of trial on this matter, that suit was still pending.