999 So.2d 816 (2008)
J. Cornelius RATHBORNE, III
v.
Carol Simmons RATHBORNE.
J. Cornelius Rathborne, III
v.
Carol Simmons Rathborne.
Nos. 2006-CA-1518, 2007-CA-0870.
Court of Appeal of Louisiana, Fourth Circuit.
December 3, 2008.
*818 Leslie A. Bonin, Kyle Schonekas, Patrick S. McGoey, Schonekas, Winsberg, Evans & McGoey, L.L.C., New Orleans, LA, for Plaintiff/Appellee (J. Cornelius Rathborne, III).
Daniel S. Mason, Zelle, Hofmann, Voelbel, Mason & Gette LLP, San Francisco, CA, Stephen B. Murray, Jr., Murray Law Firm, New Orleans, LA, for Defendant/Appellant (Carol Simmons Rathborne).
(Court composed of Judge MICHAEL E. KIRBY, Judge TERRI F. LOVE, Judge DAVID S. GORBATY, Judge EDWIN A. LOMBARD, Judge ROLAND L. BELSOME).
MICHAEL E. KIRBY, Judge.
Defendant/appellant, Carol Rathborne seeks review of two judgments, one dated June 27, 2006 and the other dated October 25, 2006.

STATEMENT OF THE FACTS
The parties were married on July 25, 1981 in East Hampton, New York. In 1989 they, moved to New Orleans. Two children were born of the marriage, John Campbell Rathborne ("Cam"), who reached the age of majority on November 25, 2001 and Alexis Simmons Rathborne ("Alexis"), who reached the age of majority on May 29, 2004.
On March 3, 1994, Mr. Rathborne filed for divorce in the matter entitled Rathborne v. Rathborne, No. 94-2523, Domestic Relations Section "1," Civil District Court for the Parish of Orleans, State of Louisiana. A Judgment of Divorce was entered on October 31, 1994. On May 3, 1995, the Civil District Court entered a Judgment ("1995 Child Support Judgment") reflecting the parties' agreements regarding alimony, custody, child support and community property.
After the divorce, Mrs. Rathborne became the domiciliary parent of the parties' children. Mrs. Rathborne remarried in 1998 and divorced again in 2002. Mrs. Rathborne alleges that her remarriage was an event that triggered a requirement that parties enter into subsequent negotiations. She further alleges that subsequent to her remarriage, there was yet another agreement involving alimony payments and additional expenses for the children. Mr. *819 Rathborne denies that any subsequent agreement exists.
The procedural history becomes convuluted at this point. In early March 2004, Mrs. Rathborne's counsel in California filed a Demand for Arbitration with the American Arbitration Association ("AAA"). On March 22, 2004, AAA responded noting that the Arbitration Clause contained in the 1995 Agreement did not designate AAA as the administering agency. While AAA was willing to perform this service, a waiver by both parties was required to circumvent the language of the 1995 Agreement. Mr. Rathborne declined to circumvent the 1995 Agreement and also argues that the alleged claims fell outside of the scope of the 1995 Agreement as Mrs. Rathborne was alleging arrears in activities and expenses and not the "reasonableness" of such expenses per the arbitration clause. Mrs. Rathborne dismissed the arbitration and did not seek to arbitrate again until after trial began.
Meanwhile, several times in various jurisdictions Mrs. Rathborne sued Mr. Rathborne regarding the May 3, 1995 Child Support Judgment alleging everything from breach of contract to contempt and seeking enforcement orders.
Thorough discovery was conducted, which produced records that Mr. Rathborne had made payments of his children's expenses for those years in excess of $857,771. After discovery, trial was conducted on January 25 and 27, and April 3, 4, and 5, 2006.
At trial Mrs. Rathborne offered an expert on social psychology and linguistics, Mr. Koenig, concerning a codicil to Mr. Rathborne's will.[1] After voir dire, the trial court ruled that it could interpret the codicil without his services.
Mrs. Rathborne testified at trial. She stated that she resides in Palm Beach, Florida, but also maintains an apartment in New York and a place in East Hampton, New York, Mrs. Rathborne is a graduate of Columbia University and also taught there. She was one of the first women in the corporate finance department at Solomon Brothers in New York and also worked at Citibank.
In 1980, while in California, she formed her own investment company, the Simmons Company, which specialized in investment banking and particularly asset-based transactions. In 1981, after her marriage to Mr. Rathborne, the family lived in Hillsborough, California. In 1988 they moved to New York until finally moving to New Orleans in 1989.
Mrs. Rathborne testified that she understood the 1995 Agreement to make a distinction between "expenses" and "activities." As regards the third paragraph of the 1995 Agreement's Section IV, concerning remarriage, she understood that the cash payments were structured as alimony payments so that Mr. Rathborne could get a tax deduction for them. Moreover, she stated that the corollary was that when she remarried:
... the cash component expenses for the children's expense would go away and there would be no cash. There would be no way to pay me their expenses.
Prior to remarriage, Mr. Rathborne paid alimony to Mrs. Rathborne in the amount of $21,000 per month, in addition to the tuition and medical expenses. In February of 1998, Mr. and Mrs. Rathborne met to discuss her possible marriage to Mr. *820 Ted Hamm. Mrs. Rathborne testified that those discussions led to a new agreement. Specifically she alleged that Mr. Rathborne agreed to pay for the children's summer "activities," such as culturally broadening trips to France, regattas in England, etc. Mrs. Rathborne testified that this alleged new agreement was reduced to writing and sent to her. She stated she signed it, but Mr. Rathborne never sent her a copy.
Mrs. Rathborne also testified that Mr. Rathborne failed to maintain a life insurance policy and did not notify her of its lapse. She also testified that Mr. Rathborne forgave a $150,000 note she owed him.
On cross examination, Mrs. Rathborne's high level of financial sophistication was evident and contrasted with the fact that she lost a contract worth $250,000 a year to her benefit. Also noted was the fact that Mrs. Rathborne kept a copy of the codicil document, but not the alleged new 1998 Agreement.
Mr. J. Cornelius Rathborne, III, testified that he was married to Mrs. Rathborne from approximately 1981 to 1995. Prior to marrying the appellant, he shad been married once before. Mr. Rathborne is engaged in commercial and some residential real estate development and he owns a substantial portion of the Rathborne Land Company.
Mr. Rathborne testified that he had forgotten to notify Mrs. Rathborne that the life insurance premiums had not been paid and that the insurance had lapsed in contravention of the 1995 Agreement. Nevertheless, he also stated he had directed the insurer to notify his former wife. On recross examination, Mr. Rathborne also denied that he ever told one of Mrs. Rathborne's attorneys that he forgave the $150,000 note.
After Mr. Rathborne's personal secretary testified, the trial court ruled orally that there was no agreement between the parties subsequent to the 1995 Consent Judgment. The trial court stated:
Mrs. Rathborne by her own testimony is a very well-educated woman. She has throughout these proceedings had the benefit of counsel in Louisiana, New York, Florida and California. There is no reason if there was a February/March, 1998 written agreement, Mrs. Rathborne or one of her attorneys would not have a copy.
Mrs. Rathborne has stated that the alleged 1998 agreement was not signed by Mr. Rathborne when she saw it. Therefore, there was never a written agreement consented [sic] by the parties. There has been no production of the 1998 agreement.
* * *
As stated, the Court finds that there was no agreement subsequent to the 1995 consent judgment.
Mrs. Rathborne filed a memorandum to clarify the June Judgment, and the trial court conducted a hearing on October 17, 2006. The October 25, 2006 Judgment denied Mrs. Rathborne's rale for contempt; ordered her to pay $24,157.50 ($26,157.50 minus $2,000 of expenses to which Mr. Rathborne admits owing); granted an extension of time to secure a $1 million life insurance policy, conditioned on the posting of a bond; ordered Mrs. Rathborne to execute the $150,000 promissory note; and ordered the parties to enter binding arbitration limited to expenses incurred subsequent to June 28, 2006.

ASSIGNMENT OF ERRORS
Mrs. Rathborne submits the that trial court erred as to the following:

*821 1. Denying Mrs. Rathborne's motion to stay the trial proceedings pending arbitration under the parties' 1995 Agreement;
2. Rejecting Mrs. Rathborne's claim for reimbursement of $288,770.88 in children's expenses on the basis of insufficient evidence;
3. Granting Mr. Rathborne reimbursement credit of one-half of the uninsured medical and dental expenses;
4. Granting Mr. Rathborne's motion to compel execution of the $150,000 promissory note on the basis of no admissible evidence of forgiveness.
Mrs. Rathborne submits that as to the second Judgment, the trial court erred in ordering Mrs. Rathborne to execute a promissory note drafted by counsel for Mr. Rathborne and limiting the scope of arbitration ordered by the trial court's first Judgment.

DISCUSSION
The appellate review of findings of fact is that of manifest error. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989); Harris v. Regional Transit Authority, 662 So.2d 134, 136 (La.App. 4 Cir.1995). Moreover, "where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable." Rosell, 549 at 844.
However, if a legal error interdicts the trial court's finding of fact, or forecloses the basis for factual findings, the appellate court must render a judgment on the trial record without remanding the case for a new trial. Ragas v. Argonaut Southwest Ins. Co., 388 So.2d 707 (La. 1980); Gonzales v. Xerox Corp., 254 La. 182, 320 So.2d 163 (La.1975).

ARBITRATION CLAUSE
First, as concerns the denial of the motion to stay proceedings pending arbitration, Section VII of the 1995 Agreement states:
Both parties do agree to submit any disputes arising hereunder concerning compliance with estimates or actual figures of gross income, sources of income, tax rates, reasonableness of school-related and college-related expenses and activities and reasonableness of medical and dental insurance premiums to binding arbitration by two independent accountants with each party choosing one accountant. If the two accountants so chosen cannot resolve any such disputes, then the two accountants shall mutually agree upon the selection of a third accountant, who is a partner of a "Big Six" accounting firm, to resolve the dispute(s).
* * *
This clause should be read in conjunction with Louisiana Revised Statute 9:4203, which states; in part:
The party aggrieved by the alleged failure or refusal of another to perform under a written agreement for arbitration, may petition any court of record having jurisdiction of the parties, or of the property, for an order directing that the arbitration proceed in the manner provided for in the agreement. Five days' written notice of the application shall be served upon the party in default. Service shall be made in the manner provided by law for the service of a summons.
* * *
A trial court has limited subject matter jurisdiction wherein a party seeks enforcement of an arbitration agreement while participating in an ongoing judicial *822 proceeding. Newlin v. Morris, XXXX-XXXX (La.App. 3 Cir. 1/5/2000), 758 So.2d 222 I.D.C., Inc. v. McCain-Winkler Partnership, 396 So.2d 590 (La.App. 3 Cir.1981). The determination of whether or not a party has waived its contractual right to arbitrate by its participation in the judicial process or by failing to timely request arbitration while participating in the judicial process is an issue properly considered by the trial court. I.D.C., Inc., supra; Sim v. Beauregard Elec. Co-op., Inc., 322 So.2d 410 (La.App. 3 Cir.1975).
In Matthews-McCracken Rutland Corp. v. City of Plaquemine, 414 So.2d 756 (La. 1982), the Louisiana Supreme Court discussed I.D.C., Inc. and Sim in its consideration of whether an arbitration agreement existing in that case had been waived. Although ultimately concluding that no waiver existed, the Supreme Court considered the waiver issue. See also Moore v. Automotive Protection Corp., 97-0623 (La. App. 4 Cir. 5/21/97), 695 So.2d 550; B & S. Equip. Co., Inc. v. Carl E. Woodard, Inc., 620 So.2d 347 (La.App. 5 Cir.1993); Newlin, supra, p. 5, at 226.
In Thomas v. Desire Community Housing Corp., 1998-2097 (La.App. 4 Cir. 7/19/00), 773 So.2d 755, we held that a right to arbitration can be waived by not seeking timely review of the trial court's overruling of the exception of prematurity. In that case, it was the defendant who was held to have waived its right to arbitration. Under these facts, we find no' error in the trial court considering these matters where plaintiff brought the suit, and after trial commenced, decided things were not going her way and then moved to stay the proceedings to seek arbitration. This is the very antithesis of the purpose of arbitration, which is to facilitate resolution of disputes, not multiply them.
Moreover, the trial court did order some issues to be arbitrated in both Judgments, while limiting their scope, just as the arbitration agreement does. The trial court properly limited the arbitrable issues to those that fell within the purview of the "reasonableness" of expenses. For these reasons, this first assignment of error has no merit.

REIMBURSEMENT CLAIMS
The next assignment of error is that the trial court improperly rejected some reimbursement claims of Mrs. Rathborne. The burden of proof in civil matters is that the plaintiff must prove her claims by a preponderance of the evidence. "Proof by a preponderance of the evidence means that the evidence, taken as a whole, shows that the fact or cause sought to be proven is more probable than not." Crowell v. City of Alexandria, 558 So.2d 216, 217 (La.1990).
In its Reasons for Judgment that denied this claim, the trial court noted that the 1995 Agreement stated the parties were supposed to negotiate the payment of expenses. Nevertheless, the testimony at trial revealed that in practice Mrs. Rathborne incurred expenses prior to consulting with Mr. Rathborne about them. At the same time, Mr. Rathborne would exercise a veto power by simply not paying certain expenses presented after they were accrued. The trial court's Reasons for Judgment deny the reimbursement claim because:
The amount allegedly owed by Mr. Rathborne changed numerous times during the course of these proceedings. The amount stated in Mrs. Rathborne's Post-Trial Memorandum is $288,770.88. Mrs. Rathborne submitted into evidence a binder of categorized expenses. However, there is no supporting documentation that indicates that the expenses were those of Cam and Alexis or that these amounts were actually paid by Mrs. Rathborne.
*823 Appellant correctly notes that Mrs. Rathborne's testimony corroborates the binder of expenses. Nevertheless, as discussed earlier, Ms. Rathborne also testified that she, or her nation-wide network of law firms, never bothered to keep a copy of the alleged 1998 Agreement worth around $250,000 per year to her. The trial court also found that Mr. Rathborne submitted evidence of payments of expenses he made for the children between 1998 and 2005, totaling $857,771.
As regards a trial court's findings of credibility, our review is that of manifest error. It was not manifestly erroneous or clearly wrong for the trial court to question the credibility of the testimony on the reimbursement claims. Rosell supra, 549 at 844. Thus, we find no error in the trial court's findings on this issue.

MEDICAL AND DENTAL EXPENSES CREDIT
The child support provision of the 1995 Agreement in Section IV, Part (2) includes a requirement that Mr. Rathborne provide health and dental insurance.
JOSEPH CORNELIUS RATHBORNE, III shall maintain medical and dental insurance on the minor children through his employer or some other business affiliation and be responsible for any uninsured medical or dental expenses incurred by the minor children except as limited below. He must approve in advance all elective treatment, but not regular visits or treatment necessitated by emergency. Should JOSEPH CORNELIUS RATHBORNE, III not have medical and dental insurance available to him through his employer or some other business affiliation, he shall make his best effort to obtain alternative insurance, at reasonable premiums, and pay all premiums due thereon. If he no longer has insurance available through his employer or some other business affiliation, or cannot provide alternative insurance, this issue must be renegotiated by the parties. If JOSEPH CORNELIUS RATHBORNE, III, has insurance, he will pay uninsured medical and dental expenses up to $5,000.00 per year. Any additional expenses shall be negotiated by the parties.
We have reviewed the record, and cannot find an instance where Mr. Rathborne requested reimbursement of medical and dental expenses outside of his appellate brief. Moreover, the language of the 1995 Agreement covering additional medical and dental expenses clearly states that they "shall be negotiated by the parties."
We find that the trial court erred in interpreting this part of the 1995 Agreement. The specific and mandatory language of Section IV Part (2) should be given more weight and prevail over the broader and more general "reasonableness of expenses" qualifier in Section VII, treating arbitration. This issue will be addressed when we discuss whether the second Judgment altered the substance of the first Judgment as regards the scope of arbitration.

EXECUTION OF PROMISSORY NOTE
Section V of the 1995 Agreement states that:
This Agreement shall not be modified or annulled by the parties hereto except by written instrument, executed in the same manner as this instrument. The failure of either party to insist upon a strict performance of any provision of this Agreement shall not be deemed a waiver of the right to insist upon a strict performance of such provision or of any other provision of this Agreement at any time.
Mrs. Rathborne offered a copy of a provision of Mr. Rathborne's will as evidence *824 of his forgiveness of her $150,000 debt to him. We note that Louisiana jurisprudence, unlike some jurisdictions, has not excluded evidence based upon federal tax implications. Nevertheless, in interpreting the 1995 Agreement of these two sophisticated parties, we would do an injustice if we did not take into account the motivations behind some of their actions. In the record Mrs. Rathborne admits that the motivation behind some of the structure of the 1995 Agreement was driven by tax implications.
Mrs. Rathborne cites Aqua Pool Renovations, Inc. v. Paradise Manor Comm. Club, Inc., 2004-119 (La.App. 5 Cir. 7/27/04), 880 So.2d 875, for the proposition that:
... written contracts may be modified by oral contracts and the conduct of the parties, even when the written contract contains a provision that change orders must be in writing.
Id., p. 880.
However, that case can be distinguished on the fact that it was a commercial case and this is a domestic one. Also, the cause or consideration and object of the obligation in a divorce settlement is much more personal than in a pool renovation/construction contract.
After conducting a review of the record, even if Mrs. Rathborne's settlement counsel's proffered testimony had been admitted, Mrs. Rathborne would not have met her burden of proving the forgiveness of a debt in writing. Thus, we find no merit in the argument that Mr. Rathborne forgave the $150,000 written debt.
As regards the note per se, we have conducted a thorough review of this lengthy record and exhibits, and have not been able to find either the note that was prepared by Mr. Rathborne's counsel nor the note prepared by Mrs. Rathborne's counsel. We note that our review is limited to the record on appeal. La. C.C.P. art. 2164. In theory, insofar as the note that Mrs. Rathborne signed does not conform with the 1995 Agreement, it is arguably void. Nevertheless, on the showing made we find no error in the outcome of Mrs. Rathborne signing a note for $150,000, as this is what the 1995 Agreement contemplated.
This leads us into the final two assignments of error which are interlinked, i.e., whether the second Judgment altered in substance the first Judgment as regards the promissory note to be signed and the scope of arbitration.
La. C.C.P. art.1951 states:
A final judgment may be amended by the trial court at any time, with or without notice, on its own motion or
(1) To alter the phraseology of the judgment, but not the substance; or
(2) To correct errors of calculation.
In Oreman v. Oreman, 05-955 (La.App. 5 Cir. 3/31/06), 926 So.2d 709, our brethren reemphasized that a judgment which has been signed cannot be altered, amended, or revised by the judge who rendered the same, except in the manner provided by law. La. C.C.P. art.1951.
On these two points, we find Mrs. Rathborne's arguments persuasive. The October 25, 2006 Judgment altered the substance of the June 27, 2006 Judgment in two ways. First, it arguably made the promissory note to be signed more onerous because of the additional terms inserted by Mr. Rathborne's counsel. Nevertheless, this argument must be dismissed, as the record is devoid of the note upon which review is sought. Second, the October Judgment limited the scope of the issues to be arbitrable to expenses incurred subsequent to June 28, 2006.
*825 Therefore, we reverse the finding on the issue of medical and dental expenses and include it within the arbitrable issues of the June Judgment. We affirm the Judgment of June 27, 2006, and reverse the Judgment of October 25, 2006, insofar as it alters the substance of the June 27, 2006 Judgment. We remand the remaining arbitrable issues and return jurisdiction to the trial court for any further potential disputes that may be raised during the arbitration.
AFFIRMED IN PART; REVERSED IN PART AND REMANDED.
GORBATY, J., concurs.
BELSOME, J., concurs in part and dissents in part.
BELSOME, J., concurs in part and dissents in part.
I concur with the majority opinion insofar as it affirms the findings of the trial court. Additionally, I concur with respect to the majority's determination regarding the October 2006 judgment as impermissibly amending the substance of the June 2006 judgment pursuant to La.Code Civ. Proc. Art.1951.
I respectfully dissent, however, with the majority's inclusion of medical and dental expenses into arbitrable issues of the June 2006 judgment. I do not agree that the trial court erred in its interpretation of Section IV(2) of the 1995 Agreement, which provided that medical and dental expenses exceeding $5,000.00 per year shall be negotiated by the parties. The trial court found that despite this provision, the parties failed to negotiate any additional expenses, and divided the medical and dental expenses equally, less the $5,000.00 already paid by Mr. Rathborne.
With respect to arbitrable expenses, the trial court's original judgment ordered that reasonableness of expenses be submitted to binding arbitration. Section VII of the 1995 Agreement provides that the parties agree to submit to binding arbitration the "reasonableness of medical and dental insurance premiums". Notably, the trial court's judgment apportioned the medical and dental expenses between the parties, not premiums. Therefore, I respectfully dissent from the majority's reversal of the trial court's determinations regarding the medical and dental expenses.
NOTES
[1] We note that in some jurisdictions, such as California, clauses in wills are not admissible under these circumstances because of the influence of tax consequences in drawing these documents.